# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL
CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.:

JLC DEVELOPERS, LLC,
a Florida limited liability company,

    Plaintiff,

v.

AMERICAN HOME ASSURANCE
COMPANY a foreign corporation

    Defendant.

_____/

**10 - 07397**



## COMPLAINT

    Plaintiff, JLC DEVELOPERS, LLC. ("JLC"), a Florida limited liability company, by and through undersigned counsel, hereby sues Defendant, AMERICAN HOME ASSURANCE COMPANY (hereinafter "AHAC") a foreign corporation, and alleges that it is entitled to relief upon the following facts:

### NATURE OF THE ACTION

1.    This is an action for Declaratory relief pursuant to Chapter 86, Florida Statutes.

### JURISDICTION AND VENUE

2.    At all times material hereto, JLC was a Florida limited liability company properly authorized to conduct business in the State of Florida with its principal place of business in Broward County, Florida.

3.    At all times material hereto, Defendant, AHAC, was and is a foreign corporation duly authorized to conduct business under the laws of the State of Florida and doing business in Broward County, Florida.

4.      Venue is proper in Broward County, Florida as that is where the property that is the subject of this action is located and where the causes of action asserted herein arose and accrued.

5.      JLC has been forced to retain Stearns, and Roberts, P.A. to represent it in this action and it obligated to pay it a reasonable fee.

6.      All conditions precedent to this action have occurred, been waived or otherwise been performed.

## COUNT I
### (Declaratory Relief)

JLC hereby reasserts and realleges paragraphs 1 through 6 supra, as if fully set forth herein.

7.      At all times material hereto Defendant, AHAC insured non-party CAPITAL TITLE AND ABSTRACT, LLC. (hereinafter "CAPITAL") Professional Liability Policy No. TPL 911-6560, *inter alia* (the attached insurance policies are hereinafter collectively referred to as the "Policy"). A copy of the Policy is attached hereto as EXHIBIT "A."

8.      On or about June 9th, 2008, JLC sued CAPITAL, *inter alia*, in a third party action in Circuit Court in and for Broward County, Florida, in the case styled *604 N.E. 14th Avenue, LLC. vs. JLC Developers, LLC.*, et. al. Case No.: CACE 08-09821 (04) for damages arising from CAPITAL's negligent failure to deposit, retain, and otherwise escrow two $50,000.00 checks submitted to CAPITAL as escrow agent in a real estate transaction to which JLC was a party. A true and correct copy of the Amended Third Party Complaint is attached hereto as EXHIBIT "B."

9.      CAPITAL failed to respond to the Complaint. On or about November 4, 2008, Final Judgment was entered against CAPITAL. A true and correct copy of the Final Judgment is attached hereto as EXHIBIT "C."

Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Sunrise, Florida 33323
Broward (954) 382-9199    Toll Free (888) 382-9199    Fax (954) 382-9063

10.    AHAC was properly and timely notified of the claims against CAPITAL.

11.    The Policy provides coverage for the damages alleged in the complaint and awarded to JLC in the Final Judgment. In pertinent part, the Policy states:

SECTION I – COVERAGE-PROFESSIONAL LIABILITY

The Company will pay on behalf of the Insured those sums in excess of the deductible which the Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD and reported to the Company in writing during the Policy Period or within sixty (60) days thereafter, by reason or any; act; error; or omission arising out of professional services rendered or which should have been rendered by the Insured or by any person or entity for whose acts, errors, or omissions the Insured is legally liable, and arising out of the conduct of the Insured's profession or capacity as a:

1. Title Insurance Agent
2. Title Abstractor
3. Closing Agent
4. Escrow Agent
5. Notary Public

12.    On or about July 21, 2008, AHAC wrongfully denied coverage under the Policy for damages caused by its insured, CAPITAL. A copy of the denial letter is attached hereto as EXHIBIT "D."

13.    JLC is in doubt as to its rights under the Policy but believes the Policy provides coverage for damage awarded pursuant to the Final Judgment.

14.    A genuine, justiciable issue and actual controversy exists between the parties regarding coverage under the Policy.

15.    There is a bona fide, actual, present practical need for the declaration.

16.    The matter for declaration concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

17.    An immunity, power, privilege or right of JLC is dependent upon the facts or the law applicable to the facts.

Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Sunrise, Florida 33323
Broward (954) 382-9199   Toll Free (888) 382-9199   Fax (954) 382-9063

18.   AHAC has or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

19.   The antagonistic and adverse interest(s) are all before the court by proper process.

20.   The relief sought is not merely giving of legal advice or the answer to questions propounded for curiosity.

**WHEREFORE**, JLC DEVELOPERS, LLC., requests entry of a declaratory judgment declaring:

A.   That the damage caused by CAPITAL TITLE & ABSTRACT, LLC. by its negligent processing and handling of said deposits is covered under the Policy.

B.   AMERICAN HOME ASSURANCE COMPANY must pay the damages pursuant to the Final Judgment against its insured, CAPITAL TITLE & ABSTRACT, LLC. attached hereto as EXHIBIT "C."; and

C.   That JLC DEVELOPERS, LLC. is entitled to such further and additional relief as the Court may deem just and proper, including, without limitation, attorneys' fees and costs.

Respectfully submitted this _11th_ day of February, 2010.

STEARNS & ROBERTS, P.A.
Attorneys for JLC DEVELOPERS, LLC.

By: _____
DOUGLAS J. ROBERTS
FBN: 0037486
PETER B. ROWELL
FBN: 0017600

4

Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Sunrise, Florida 33323
Broward (954) 382-9199   Toll Free (888) 382-9199   Fax (954) 382-9063

# AMERICAN HOME ASSURANCE COMPANY

## TITLE AGENTS PROFESSIONAL LIABILITY
### DECLARATIONS

Policy #      TPL 911-      6560-01
Renewal of:   TPL-911-      6560

### THIS IS A CLAIMS MADE POLICY. PLEASE READ THIS POLICY CAREFULLY

Notice: This is a claims made Policy. Except as may be otherwise provided herein, this coverage is limited to the liability for only those claims which are first made against the Insured and reported to the Company while the Policy is in force.

| | | |
|---|---|---|
| ITEM 1. | Named Insured | Capital Title and Abstract, LLC |
| | Mailing Address | 1100 Park Central Boulevard South<br>Suite 3300<br>Pompano Beach, FL  33064 |

ITEM 2.   Policy Period       06-Oct-2007        to         06-Oct-2008

| | | | |
|---|---|---|---|
| ITEM 3. | Limit of Liability | $1,000,000 | Each claim |
| | | $1,000,000 | Aggregate for the policy period |

ITEM 4.   Deductible         $2,500            each claim

ITEM 5.   Retroactive Date
This insurance does not apply to any claims made against the Insured based upon, arising out of, or attributable to any act(s), error(s), omission(s), or personal injury(ies) committed or alleged to have been committed prior to the Retroactive Date:     October 5, 2005

| | | |
|---|---|---|
| ITEM 6. | Premium | $3,000 |
| | FHCF | $30 |
| | Regular FIGA | $28 |
| | Emerg FIGA | $28 |
| | TOTAL | $3,086 |

The Declarations Page and the forms listed below and attached hereto, together with the completed and signed application shall constitute the contract between the Insured(s) and the Company

Forms and endorsements which make a part of this policy are:
75102 (02/00)                          T75206 (09/01)
75100 (02/00)
75103 (03/00)
77898 (04/00)
76105 (5/00)
PHN

Authorized Representative                          October 9, 2007
                                                   Date

Countersignature

                                                   75101 (02/00)

EXHIBIT
A

# THE PLUS COMPANIES, INC.
P. O. Box 6920
920 U.S. Highway 22
Bridgewater, NJ 08807-0920
(908)685-7650

# Invoice

| | Capital Title and Abstract, LLC | |
| --- | --- | --- |
| | | 98648 |
| | 10/05/2007 | |
| | (908)685-7650 | |
| | 1 of 1 | |

Dean Insurance Agency Inc
230 N Westmonte Drive
Suite 2100
Altamonte Springs, FL 32714

*Attn: Sue/lena @ (407) 772-5925*

| | | |
| --- | --- | --- |
| | | 2,711.00 |
| | | |
| Payment for: | Invoice #29118 | |
| TPL 911-6560-01 | | |
| | | Thank you |

Please detach and return with payment

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Client:  Capital Title and Abstract, LLC

| Invoice | Effective | Transaction | Description | Amount |
| --- | --- | --- | --- | --- |
| 29118 | 10/06/2007 | Renew policy<br>Commission Credit<br>Renew policy | Policy #TPL 911-6560-01<br>10/06/2007-10/06/2008<br>American Home Assurance<br>Title Agents Professional - Renew policy<br>on 3,000.00<br>FIGA-EMERGENCY<br>FIGA-REGULAR<br>FL Catastrophe Surcharge | 3,000.00<br>-375.00<br>28.00<br>28.00<br>30.00 |

THIS FAX IS THE ONLY INVOICE YOU WILL RECEIVE. PLEASE PAY BY *11/15/07*.

| | |
| --- | --- |
| | 2,711.00 |

**Thank you**

| THE PLUS COMPANIES, INC.<br>(908)685-7650 | Date |
| --- | --- |
| | 10/05/2007 |

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102

PHN

### American Home Assurance

ENDORSEMENT NO. _____1_____

This endorsement effective 10/06/20067

Forms a part of policy number TPL 911-6560-01

Issued to Capital Title and Abstract, LLC

By American Home Assurance

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIFIC ENTITY EXCLUSION

It is agreed that the Company shall have no obligation whatsoever under this Policy to make any payment of any kind for either Claims Expenses or Damages, or to arrange for, provide, or pay for any defense, for any Claim made by, against, or arising from any acts, errors, or omissions committed by:

1) Global America Title Services, LLC
2) City Financial Home Loans, Inc.

All other terms, conditions, and exclusions of this policy shall remain unchanged.

_____
Authorized Representative

_____October 9, 2007_____
Date

T75206 (04/01)
T75206 (09/01)

#2

6/05/2007 14:41 FAX 908 685 7655 THE PLUS COMPANIES, INC. ☑ 001

```
*********************
***  TX REPORT  ***
*********************

TRANSMISSION OK

TX/RX NO              4781
RECIPIENT ADDRESS     914077725925
DESTINATION ID
ST. TIME              10/05 14:40
TIME USE              00'50
PAGES SENT            1
RESULT               OK
```

## THE PLUS COMPANIES, INC.

P. O. Box 6928
520 U.S. Highway 22
Bridgewater, NJ 08807-0920
(908)685-7650

Dean Insurance Agency Inc
230 N Westmonte Drive
Suite 2100
Altamonte Springs, FL 32714

Attn: Sue (Una (407) 772-5925

# Invoice

| | |
|---|---|
| Capital Title and Abstract, LLC | |
| | 99648 |
| 10/05/2007 | |
| (908)685-7650 | |
| 1 of 1 | |

| | |
|---|---|
| | 2,711.00 |
| Payment for: | Invoice #29118 |
| TPL 911-6560-01 | |
| | Thank you |

-----------------------✂ Please detach and return with payment -----------------------

Client: Capital Title and Abstract, LLC

| 29118 | 10/06/2007 | Renew policy Commission Credit Renew policy | Policy #TPL 911-6560-01 10/06/2007-10/06/2008 American Home Assurance Title Agents Professional - Renew policy on 3,000.00 FICA-EMERGENCY FICA-REGULAR FL Catastrophe Surcharge | 3,000.00 -375.00 28.00 28.00 30.00 |
|---|---|---|---|---|

*American Home Assurance*

ENDORSEMENT NO. _____2_____

This endorsement effective 02/21/2007

Forms a part of policy number TPL 911-6560

Issued to Capital Title and Abstract, LLC

By American Home Assurance

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CHANGE ENDORSEMENT

It is agreed that Item #1, Mailing Address, on the Declarations Page is amended to read as follows:

1100 Park Central Boulevard South
Suite 3300
Pompano Beach, FL  33054

All other terms, conditions and exclusions of this policy shall remain unchanged.

_____
Authorized Representative

_____2/28/2007_____
Date

Lexington Change Endorsement
77294 (09/01)

AFTER 3

# AMERICAN HOME ASSURANCE COMPANY

## TITLE AGENTS PROFESSIONAL LIABILITY
## DECLARATIONS

Policy #          TPL-911- 6560
Renewal of:         NEW

### THIS IS A CLAIMS MADE POLICY. PLEASE READ THIS POLICY CAREFULLY

Notice: This is a claims made Policy. Except as may be otherwise provided herein, this coverage is limited to the liability for only those claims which are first made against the Insured and reported to the Company while the Policy is in force.

| | | | | |
|---|---|---|---|---|
| ITEM 1. | Named Insured | Capital Title and Abstract, LLC | | |
| | Mailing Address | 1850 S. Ocean Drive Suite 605 Hallandale, FL 33009 | | |
| ITEM 2. | Policy Period | 06-Oct-2006 | to | 06-Oct-2007 |
| ITEM 3. | Limit of Liability | $1,000,000 $1,000,000 | | Each claim Aggregate for the policy period |
| ITEM 4. | Deductible | $2,500 | | each claim |

ITEM 5.   Retroactive Date

This insurance does not apply to any claims made against the Insured based upon, arising out of, or attributable to any act(s), error(s), omission(s), or personal injury(ies) committed or alleged to have been committed prior to the Retroactive Date:          October 6, 2006

ITEM 6.   Premium          $3,000

The Declarations Page and the forms listed below and attached hereto, together with the completed and signed application shall constitute the contract between the Insured(s) and the Company

Forms and endorsements which make a part of this policy are:
| | |
|---|---|
| 75102 (02/00) | T75206 (09/01) |
| 75100 (02/00) | |
| 75103 (03/00) | |
| 77898 (04/00) | |
| 78105 (5/00) | |
| PHN | |

_Chucki Hauger_                    October 16, 2006

Authorized Representative                    Date

_____

Countersignature                    75101 (02/00)

This endorsement, effective                                   forms part of

policy no.:            issued to

by:

## FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.      The Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

B.1.    Cancellation for Policies in Effect Ninety (90) Days or Less

If this policy has been in effect ninety (90) days or less the Insurer may cancel this policy by mailing or delivering to the Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a)     Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

(b)     Twenty (20) days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

1.      A material misstatement or misrepresentation; or
2.      A failure to comply with underwriting requirements established by the Insurer.

B.2.    Cancellation for Policies in Effect for More Than Ninety (90) Days

If this policy has been in effect for more than ninety (90) days the Insurer may cancel this policy only for one or more of the following reasons:

(a)     Nonpayment of premium;

(b)     The policy was obtained by a material misstatement;

(c)     There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

(d)     There has been a substantial change in the risk covered by the policy; or

(e)     The cancellation is for all insureds under such policies for a given class of insureds.

76105(5/00)            Page 1 of 2

*American Home Assurance*

ENDORSEMENT NO. _____1_____

This endorsement effective 10/06/2006

Forms a part of policy number TPL 911-6560

Issued to Capital Title and Abstract, LLC, DBA:

By American Home Assurance

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIFIC ENTITY EXCLUSION

It is agreed that the Company shall have no obligation whatsoever under this Policy to make any payment of any kind for either Claims Expenses or Damages, or to arrange for, provide, or pay for any defense, for any Claim made by, against, or arising from any acts, errors, or omissions committed by:

1) Global America Title Services, LLC
2) City Financial Home Loans, Inc.

All other terms, conditions, and exclusions of this policy shall remain unchanged.

_____
Authorized Representative

_____October 16, 2006_____
Date

T75206 (04/01)
T75206 (09/01)                                                #2

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102

PHN

AMERICAN HOME
A S S U R A N C E   C O M P A N Y
NEW YORK, NEW YORK A CAPITAL STOCK COMPANY  FOUNDED 1853
EXECUTIVE OFFICES:  70 PINE STREET   NEW YORK, NEW YORK   10270

# TITLE INSURANCE AGENTS

# PROFESSIONAL LIABILITY
# INSURANCE POLICY

IMPORTANT: READ YOUR POLICY.
KEEP ALL DECLARATIONS AND ALL
POLICY RECORDS BEHIND THIS COVER.

1 of 7

75102 (2/00)

## TITLE INSURANCE AGENTS PROFESSIONAL LIABILITY INSURANCE

**This is a Claims Made Policy - Please Read It Carefully**

In consideration of the payment of the premium and in reliance upon the statements in the application attached hereto and made a part hereof, and subject to all of the terms of the policy, the Company agrees with the Named Insured to provide coverage as follows:

### INSURING AGREEMENTS

**I. COVERAGE-PROFESSIONAL LIABILITY**

The Company will pay on behalf of the Insured those sums in excess of the deductible which the Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD and reported to the Company in writing during the Policy Period or within sixty (60) days thereafter, by reason of any act, error, or omission arising out of professional services rendered or which should have been rendered by the Insured or by any person or entity for whose acts, errors, or omissions the Insured is legally liable, and arising out of the conduct of the Insured's profession or capacity as a:

1. Title Insurance Agent
2. Title Abstractor
3. Closing Agent
4. Escrow Agent
5. Notary Public

**II. DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

As respects such insurance as is afforded by this policy, the Company shall:

(A) have the right and duty to defend, including selection of counsel and arbitrators, in the Insured's name and on the Insured's behalf any Claim for Damages against the Insured, even if such Claim is groundless, false or fraudulent; and have the right to make such investigation, negotiation and settlement, subject to II.B. below of any Claim as it deems expedient;

(B) not settle any Claim without the written consent of the Insured. If, however, the Insured refuses to consent to a settlement recommended by the Company and elects to contest the Claim or continue legal proceedings in connection with such Claim, the Company's liability for the Claim shall not exceed the amount for which the Claim could have been settled, including Claims Expenses incurred with its consent up to the date of such refusal, or the applicable limit of liability, whichever is less.

In any event, the Company shall not be obligated to pay any Damages or defend or continue to defend any Claim after the limit of the Company's liability has been exhausted by payment of Damages and/or Claims Expenses, or by deposit of the applicable limit of liability in a court of competent jurisdiction.

**III. CLAIMS EXPENSES**

Claims Expenses shall be included within the deductible and the limit of liability and not in addition thereto. Such Claims Expenses shall reduce the available limit of liability.

**IV. TERRITORY**

This policy applies to: acts, errors, and omissions that occur anywhere in the world provided Claim is made and suit or arbitration proceedings are first brought against the Insured in the United States of America, its territories or possession or Canada.

### DEFINITIONS

I. "INSURED" WHENEVER USED IN THIS POLICY SHALL MEAN:

A) the Named Insured as stated in the Declarations;

B) any past or present partner, officer, director, or employee of the Named Insured but only as respects professional services rendered on behalf of the Named Insured;

C) the heirs, executors, administrators and legal representatives of any insured in the event of an insured's death, incapacity or Bankruptcy; but only as respects professional services rendered by such insured prior to such insured's death, incapacity or Bankruptcy.

2 of 7

II. "CLAIMS EXPENSES" WHENEVER USED IN THIS POLICY SHALL MEAN:

A) fees charged by any lawyer designated by the Company; and

B) if authorized by the Company, all other fees, costs and expenses resulting from investigation, adjustment, defense and appeal of any Claim, suit or proceeding.

Claims Expenses shall not include salaries and expenses of employees or officials of the Company.

III. "CLAIM" WHENEVER USED IN THIS POLICY SHALL MEAN: a demand received by the insured for Damages, including, but not limited to, the service of suit or institution of arbitration proceedings against the insured.

IV. "DAMAGES" WHENEVER USED IN THIS POLICY SHALL MEAN: the monetary portion of any judgment, award or settlement, provided always that Damages shall not include:

A) punitive or exemplary Damages; or

B) sanctions, fees, fines or penalties imposed by law; or

C) matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed; or

D) matters not covered by this policy.

V. "POLICY PERIOD" WHENEVER USED IN THIS POLICY SHALL MEAN: the period from the effective date of this policy to the expiration date as set forth in the Declarations or earlier termination date, if any, of this policy.

VI. "INSOLVENCY" AS THE TERM IS USED IN THIS POLICY IS DEFINED TO BE ANY OF THE FOLLOWING SITUATIONS OR CONDITIONS:

A) inability to pay debts or bills on the date they are owed or when they fall due; OR

B) a condition of assets and liabilities that the former, if all were immediately available, would not be sufficient to discharge the latter.

VII. "BANKRUPTCY" AS THE TERM IS USED IN THIS POLICY SHALL MEAN: the condition or status in which a voluntary or involuntary petition in Bankruptcy has been filed with any federal Bankruptcy court.

## EXCLUSIONS

This policy does not apply to:

A) any Claim that results in final adjudication against any insured that the insured has committed any: criminal; dishonest; fraudulent; or malicious act; error; or omission;

The Company shall provide a defense for such Claims without any liability on the part of the Company to pay Damages which the adjudged insured becomes legally obligated to pay. This Exclusion does not apply to any insured who is not so adjudged to have committed such act, error, or omission. This policy shall then pay only in excess of the deductible and in excess of the full extent of the available capital and assets of any insured who was so adjudged to have committed such act; error; or omission. Any personal assets of such insured recovered by the Named Insured shall inure, to the extent of the amount paid by this policy, to the benefit of the Company.

B) any Claim based upon or arising out of: any act; error; or omission occurring prior to the effective date of the policy if the insured at the effective date knew or could have reasonably foreseen that such act; error; or omission might be expected to be the basis of a Claim or suit;

C) any Claim based upon or arising out of: bodily injury; sickness; disease; death; emotional distress; or personal injury of any person; or damage to or destruction of any tangible property or loss of use thereof;

D) any Claim based upon or arising out of the insured's activities as: an officer; director; partner; manager; or employee of any company, corporation, operation, organization or association other than the Named Insured;

E) any Claim made against an insured by any insured or by any person or entity which at any time had any equity or ownership interest in the Named Insured;

75102 (2/00)                                            3 of 7

F) any Claim based upon or arising out of: discrimination; harassment; or misconduct by any Insured on the basis of: race; creed; national origin; age; sex; marital status; health status; or sexual preference or orientation;

G) any Claim based upon or arising out of the conduct of any business enterprise other than the Named Insured (including the ownership, maintenance or care of any property in connection therewith) which is owned by any Insured or in which any Insured is a partner, officer, director, or employee; or which is directly or indirectly controlled, operated or managed by any Insured either individually or in a fiduciary capacity;

H) any Claim based upon or arising out of the Insured's activities or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto;

I) any Claim based upon or arising out of any violations of: the Securities Exchange Act of 1933; the Securities Exchange Act of 1934; the Trust Indenture Act of 1939; the Investment Advisors Act of 1940; or State Blue Sky or securities laws, any amendments thereto or any regulations or orders issued pursuant thereto;

J) any Claim alleging the failure to maintain sufficient insurance, including, but not limited to, adequate levels or limits of insurance;

K) any Claim based upon or arising out of the actual or alleged theft, stealing, conversion, commingling, embezzlement or misappropriation by any person of any escrow, trust, or mortgage monies or funds, or of any other monies, funds, securities or assets;

L) any Claim based upon or arising out of the Insolvency or Bankruptcy (as those terms are defined herein) of the Named Insured or of any person with any equity or ownership interest in the Named Insured;

M) any Claim based upon or arising out of the intentional or willful failure to follow any escrow or closing instructions, or to the intentional or willful disregard of any escrow or closing instructions;

N) any Claim based upon or arising out of the intentional or willful breach or disregard of any oral or written underwriting or binding authority;

O) any Claim based upon or arising out of any oil or gas related title work or to any oil or gas interests or property rights;

P) any Claim based upon or arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 (commonly known as [RICO]); Title 18 U.S.C. Section 1960 ET SEQ.; or any similar State statute;

Q) any Claim based upon or arising out of liability assumed by any Insured under the terms of any contract or agreement, unless such liability would have attached to the Insured even in the absence of the contract or agreement;

R) any Claim based upon or arising out of notarized certification or acknowledgment of a signature without the physical appearance before such notary public by the person who is or claims to be the person signing said instrument;

S) any Claim alleging any violation of any antitrust law or statute.

## LIMIT OF LIABILITY AND DEDUCTIBLE

**L.   LIMIT OF LIABILITY**

The limit of liability shall apply in excess of the deductible. Claims Expenses and amount paid or incurred in satisfaction of Claims are subject to the applicable limits of liability.

Claims Expenses shall first be subtracted from the limit of liability, with the remainder, if any, being the amount available to pay Damages.

The liability of the Company for the combined total of Damages and Claims Expenses for each Claim first made against the Insured during the Policy Period, including the Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations for "each Claim."

Subject to the provisions for "each Claim," the liability of the Company shall not exceed the amount stated in the Declarations as "aggregate" as a result of all Claims first made against the Insured during the Policy Period, including the Extended Reporting Period, if purchased.

75102 (2/00)




**II.  DEDUCTIBLE**

The deductible stated in the Declarations applies to each Claim and shall be paid by the Insured. The deductible shall be applicable to the combined total of Damages and Claims Expenses. Payment of the deductible or portions thereof shall be made by the Insured within thirty (30) days of receipt of demand by the Company.

**III.  MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS**

The inclusion of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the limits of liability or deductible. Two or more Claims arising out of a single act, error, or omission or a series of related acts, errors; or omissions shall be treated as a single Claim.

All such Claims whenever made shall be considered first made on the date on which the earliest Claim arising out of such act; error; or omission was first made and all such Claims are subject to the same limit of liability and deductible.

**IV.  REIMBURSEMENT TO THE COMPANY**

If the Company has paid any amounts in satisfaction of any Claims and / or Claims Expenses in excess of the applicable limit of liability, or within the amounts of the applicable deductible, the Insureds, jointly and severally shall be liable to the Company for any and all such amounts and, upon demand, shall pay such amounts to the Company.

**CONDITIONS**

**I.  INSURED'S DUTIES IN THE EVENT OF A CLAIM**

As a condition precedent to the availability of coverage under this policy, the Insured's duties in the event of a Claim are as follows:

A)  If a Claim is made against the Insured, the Insured must give immediate written notice to the Company, directed to:

A.I.G.T.S., PPL Claims
175 Water Street, 7th Floor
New York, NY 10038

Notice shall include every: demand; notice; summons; or other process received by the Insured.

B)  The Insured shall cooperate with the Company in the defense, investigation and settlement of any Claim. Upon the Company's request, the Insured shall submit to examination or questioning, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits.

C)  The Insured shall assist the Company in securing any rights of indemnity, contribution or apportionment available to the Insured or the Company.

D)  The Insured shall not, without prior written consent of the Company, make any payment, admit liability, settle Claims, assume any obligations, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any Claims Expenses on behalf of the Company.

**II.  REPORTING OF POTENTIAL CLAIMS**

If, during the Policy Period, the Insured first becomes aware of any act; error; or omission which might reasonably give rise to a Claim against the Insured under this policy and gives written notice of such act; error; or omission to the Company during the Policy Period, any Claim subsequently made against the Insured arising out of that act; error; or omission shall be considered to have been made during the Policy Period.

Written notice of a potential Claim shall include:

A)  the specific act; error; or omission; and

B)  the injury or damage that may reasonably result; and

C)  the circumstances by which the Insured became aware of the act; error; or omission.

The Insured shall cooperate with the Company as set forth in Condition I.

5 of 7

75102 (2/00)



**III.  NOTIFICATION OF CHANGE IN OWNERSHIP**

The Insured agrees to notify the Company in writing within (10) days of the date of any change in the majority equity or ownership interest in the Names Insured.  The notification shall identify the new majority owners and state the manner in which they obtained their ownership interests.

**IV.  COMPANY'S RIGHT TO AUDIT**

The Company has the right at any time to audit the Insured's records. This may be done at any time during or after the Policy Period at the sole discretion of the Company The Company shall give a ten (10) day written notice to the Insured prior to the date of audit.

**V.  EXTENDED REPORTING PERIOD**

If the Company or the Named Insured shall cancel or nonrenew this policy, the Named Insured shall have the right to extend the time for reporting Claims made against an Insured for an additional twelve (12) months past the end of the Policy Period. The additional premium for the Extended Reporting Period shall be 125% of the policy's last annual premium.

This option applies only to Claims otherwise covered by this policy which are first made against the Insured and reported to the Company during the Extended Reporting Period. Coverage for Claims first made and reported during the Extended Reporting Period applies only to Claims for: acts; errors; or omissions which took place prior to the end of the Policy Period and after the retroactive date, if any.

This right to purchase the Extended Reporting Period is subject to the following conditions:

A)  This policy was cancelled or nonrenewed for reasons other than non-payment of premium.

B)  Any deductible amounts due the Company must first be paid by the Insured.

C)  The Named Insured must send written notice to the Company of the intention to purchase the Extended Reporting Period accompanied by the additional premium. Written notice and premium payment must be received by the Company within sixty (60) days after the termination or nonrenewal date of the Policy Period.

D)  Separate or new limits do not apply to the Extended Reporting Period. In no event shall the Company be required to make any payment for Claims or Claims Expenses which exceed the balance of the limit of liability in effect at the time the policy is terminated.

E)  This option to extend the reporting period does not extend the Policy Period.

F)  This option is not available if any Insured's license or right to practice his or her profession is revoked, suspended by or surrendered at the request of any regulatory authority.

**VI.  SUBROGATION**

In the event of payment by the Company under this policy, the Company shall be subrogated to all of the Insured's rights of recovery against any person or organization. The Insured shall cooperate with the Company and do whatever is necessary to secure such rights and shall do nothing to prejudice such rights.

**VII.  CHANGES**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this policy nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**VIII.  ASSIGNMENT**

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon. If, however, an Insured shall die or be adjudged incompetent, this policy shall cover the Insured's legal representative as the Insured with respect to liability previously incurred and covered by this policy.

**IX.  CANCELLATION**

This policy may be cancelled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. If this policy is cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium.

75102 (2/00)

This policy may be cancelled by the Company by mailing to the Named Insured at the address stated in the Declarations written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective; but this policy may be cancelled as aforesaid by not less than ten (10) days notice when the cancellation is due to non-payment of premium. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. If the Company cancels, earned premium shall be computed pro rata.

Delivery of written notice by the Company shall be equivalent to mailing. Premium adjustment may be made at the time cancellation is effected or as soon as practical thereafter.

## X. OTHER INSURANCE

If there is other insurance applicable to a Claim covered by this policy, this policy shall be deemed excess insurance over and above the applicable limits of liability of all such other insurance unless such other insurance is written only as specific insurance over the limits of liability provided in this policy.

## XI. ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgement or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability.

## XII. ENTIRE AGREEMENT

By acceptance of this policy, the Insured reaffirms as of the effective date of this policy that: (a) the statements in the application attached hereto and made a part hereof are the Insured's agreements and representations; (b) this policy is issued in reliance upon the truth, accuracy and completeness of such representations; and (c) this policy embodies all agreements between the Insured and the Company or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and secretary; but this policy shall not be binding upon the Company unless completed by a Declarations page and countersigned on the aforesaid Declarations page by a duly authorized representative of the Company.

_____
Secretary

_____
President

75102 (2/00)

THIS ENDORSEMENT EFFECTIVE
FORMS A PART OF POLICY NUMBER
ISSUED TO
BY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

It is agreed that:

**I**    The Insurance does not apply:

     **A)**    Under any Liability Coverage, to "bodily injury" or "property damage":

         **(1)**    With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

         **(2)**    Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued, would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

     **B)**    Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

     **C)**    Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

         **(1)**    The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

         **(2)**    The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**II**    As used in this endorsement:

- "Hazardous properties" includes radioactive, toxic or explosive properties.
- "Nuclear material" means "source material", "special nuclear material" or "by-product material."
- "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.
- "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."
- "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."
- "Nuclear facility" means:
  - **(a)** Any "nuclear reactor";
  - **(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";
  - **(c)** Any equipment or device used in the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
  - **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.
- "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
- "Property damage" includes all forms of radioactive contamination of property.

All other terms, conditions and exclusions of this Policy shall remain unchanged.

75103 (3/00)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXTENDED REPORTING
## ADDITIONAL OPTIONS ENDORSEMENT

It is hereby understood and agreed that the following options are added to Section V – Extended Reporting Period of the Policy:

1. Twenty-Four (24) months Extended Reporting Period at 150% of the Policy's last annual premium.

2. Thirty-Six (36) months Extended Reporting Period at 200% of the Policy's last annual premium.

3. Sixty (60) months Extended Reporting Period at 225% of the Policy's last annual premium.

4. Unlimited Extended Reporting Period at 250% of the Policy's last annual premium.

All other terms, conditions and provisions of the Policy remain unaltered.

77898 (04/00)

21.0801
Casalena

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

604 NE 14th AVENUE, LLC, a Florida limited          CASE NO. CACE 08-09821 (04)
liability company,,

        Plaintiff,

v.

JLC DEVELOPERS, LLC, a Florida limited liability
company, and JOSEPH L. CASALENA, an
individual,,

        Defendant(s).

JLC Developers, LLC, a foreign
limited liability corporation, and
Joseph Caselena,

        Third Party Plaintiffs,

v.

A&J Trust, LLC, a Florida
limited liability corporation, and
Jeff Rose, an individual, and Capital
Title and Abstract, LLC, a Florida
limited liability corporation,

        Third Party Defendants.
_____/

## THIRD PARTY COMPLAINT
### AMENDED ONLY AS TO A&J TRUST, LLC AND JEFF ROSE

Third Party Plaintiffs, JLC Developers, LLC and Joseph Casalena hereby sue

Third Party Defendants A&J Trust, LLC, Jeff Rose, and Capital Title and Abstract, LLC,

and as grounds for judgment in its favor alleges:

    1.    This is an action for damages that exceed $15,000.00, exclusive of

interest, costs, and attorney's fees.

Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199    Toll Free (888) 382-9199    Fax (954) 382-9063


EXHIBIT
B

2.      At all times material hereto, JLC Developers, LLC was a foreign limited liability company properly authorized to conduct business in the State of Florida with its principal place of business in Broward County, Florida.

3.      At all times material hereto, Joseph Casalena was an individual over 18 years of age, otherwise sui juris, and residing in Broward County, Florida.

4.      Third Party Defendant A&J Trust, LLC ("A&J") is a Florida limited liability corporation with its principal place of business in Broward County, Florida.

5.      Third Party Defendant Jeff Rose ("Rose") is an individual over 18 years of age with his residence and principal place of business in Broward County, Florida.

6.      Third Party Defendant Capital Title and Abstract, LLC ("Capital Title") is an inactive Florida limited liability corporation that had its principal place of business in Broward County, Florida.

7.      Venue is proper in Broward County, Florida as that is where the defendants have and/or had their principle places of business, where they reside, and/or where the acts and omissions giving rise to the causes of action asserted herein all occurred.

8.      Third Party Plaintiff has met all conditions precedent to the filing of this action or such conditions have been performed, waived, excused or prevented.

9.      Third Party Plaintiff was caused to retain undersigned counsel to enforce its rights against the defendants and seeks recovery of its reasonable attorney's fees incurred in connection with this matter.

## General Allegations

10.     For the purposes of some allegations herein, Third Party Plaintiff acted by or through attorney Robert Reske.

2

11.     At all times material hereto, pursuant to a preconstruction purchase contract, Third Party Plaintiff had the right but not the duty to acquire the fee interest in the following described properties:

> 1401 and 1405 NE 6th Street Avenue, Fort Lauderdale, FL 33304
> *also known as Units 1 & 2, Victoria Landings*

(hereinafter, the "Units").

12.     In July 2007, Third Party Defendant A&J, acting through Third Party Defendant Rose, executed two written agreements, entitled "Deposit Receipt and Contract for Sale and Purchase," for the purchase of the Units from Third Party Plaintiff. True and correct copies of the two written contracts, with all addendums thereto (collectively, "Contracts"), are attached hereto as Exhibit A.

13.     Pursuant to the terms of the Contracts, Third Party Defendant A&J agreed to pay $740,000.00 for each of the Units. Thus, Third Party Defendant A&J agreed to pay a total of $1,580,000.00 for the Units.

14.     Pursuant to the terms of the Contracts, Third Party Defendant A&J agreed to deposit with an escrow agent $50,000.00 for each of the Units. Thus, Third Party Defendant A&J agreed to deposit a total of $100,000.00 towards the purchase and sale of the Units.

15.     Pursuant to the terms of the Contracts, Third Party Defendant A&J agreed to deliver the $100,000.00 of deposit monies to G. Barnett & Associates.

16.     Third Party Defendant A&J failed to, and did not, deliver the $100,000.00 of deposit monies to G. Barnett & Associates.

17.     Third Party Plaintiff delivered to Third Party Defendants A&J and Rose, as well as to his agents, John Hotte, Esq., and Castelli Real Estate ("Castelli") notice of the fact that G. Barnett & Associates claimed no involvement

3

18.     On or about August 13, 2007, Third Party Defendant A&J, or its agent, delivered to Third Party Defendant Capital Title two $50,000.00 checks, along with the Contracts.  A true and accurate copy of one of those checks is attached hereto as Exhibit B.

19.     On or about August 9, 2007, and on occasions subsequent thereto, Third Party Defendant Capital Title confirmed that it was holding the $100,000.00 in escrow.

20.     Third Party Defendant A&J's agent, Castelli, assured Third Party Plaintiff that it had escrow letters from Third Party Defendant Capital Title.

21.     Pursuant to the terms of the Contracts, Third Party Defendant A&J agreed to make a good faith, diligent effort to obtain mortgage financing "upon the terms generally prevailing at such time in the county where the Real Property is located."

22.     Third Party Defendant A&J did, in fact, receive from a lender, The Mortgage Force, a mortgage loan commitment offering reasonable terms in the then-current market for financing the purchase of the Units.

23.     Third Party Defendant A&J rejected the loan commitment.

24.     Pursuant to the terms of the Contracts, Third Party Defendant A&J was prohibited from engaging in any act or omission which would "produce a rejection by any lender" and any such act or omission would constitute a default under the Contracts.

25.     Pursuant to the terms of the Contracts, Third Party Defendant A&J was provided with an opportunity to terminate each of the Contracts upon proper notice, if Third Party Defendant A&J either failed to obtain a loan commitment or was not able to comply with the terms of any loan commitment obtained.  Said opportunity ceased "upon [Third Party Defendant A&J] obtaining a loan commitment prior to delivery of the notice of termination."

Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199    Toll Free (888) 382-9199    Fax (954) 382-9063

26.    Neither Third Party Defendant A&J, nor anyone acting in its behalf, ever delivered a notice of termination to Third Party Plaintiff.

27.    Pursuant to the terms of the Contracts, closing of each of the agreed-upon transactions was to occur 15 days after a certificate of occupancy was issued for the respective unit.

28.    The Contracts were delivered to Capital Title, along with Third Party Defendant A&J's two $50,000.00 deposit checks.

29.    Upon receipt and acceptance of the Contracts and deposit checks, Third Party Defendant Capital Title was bound by the terms of the Contracts and the law governing the duties of title insurance agencies and escrow agents for disbursing the $100,000.00.

30.    Paragraph 28.1 of the Contracts states that, "Escrow Agent agrees to promptly deposit, retain, and disburse all deposits in accordance with the terms of this Contract or as may be directed in writing by Seller and Buyer or as may be directed by a court of competent jurisdiction."

31.    Furthermore, paragraph 28.2 of the Contracts states that, "If the Escrow Agent is in doubt as to his duties, Escrow Agent shall retain the deposits until Seller and Buyer collectively agree in writing to the disposition thereof or until a court of competent jurisdiction has adjudicated the rights of Seller and Buyer."

32.    Thus, paragraphs 28.1 and 28.2 of the Contracts establish that Third Party Defendant Capital Title was required to deposit the two $50,000.00 checks and retain the proceeds thereof unless and until both Third Party Plaintiff and Third Party Defendant A&J provided written instruction as to how those monies should be disbursed.

Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199    Toll Free (888) 382-9199    Fax (954) 382-9063

33.     Similarly, section 626.8473, Florida Statutes required Third Party Defendant Capital Title to deposit and hold in trust the proceeds of the two $50,000.00 checks.

34.     Third Party Plaintiff never authorized Third Party Defendant Capital Title to disburse, release, or otherwise act upon the deposit monies forwarded by Third Party Defendant A&J along with the Contracts.

35.     Nevertheless, Third Party Defendant Capital Title complied with the directions of Third Party Defendant Rose to not present, cash, or otherwise submit for payment the two $50,000.00 checks submitted along with the Contracts as deposits on the Units.

36.     Thus, Defendant Capital Title wrongfully failed to deposit the two $50,000.00 checks as required by the Contracts and as required by law, thus depriving Third Party Plaintiff of a property interest to which it had a contractual and legal right.

37.     On or about January 4, 2008, notice that the Certificates of Occupancy had been issued and demand for closing was delivered to Third Party Defendant A&J.

38.     On January 8, 2008, Third Party Plaintiff again demanded that Third Party Defendant A&J schedule closing.

39.     Refusing to comply with the requirement to close within 15 days of the date of the Certificates of Occupancy, Third Party Defendant A&J and/or Third Party Defendant Rose, personally and through their agents, insisted on closing at a later time.

40.     Third Party Defendants A&J and Rose never closed on the sale of the two Units.

41.     On January 14, 2008, Third Party Plaintiff declared Third Party Defendant A&J in default.

6

42.     On January 16, 2008, Third Party Plaintiff demanded that Third Party Defendant A&J authorize Third Party Defendant Capital Title to release the $100,000.00 deposit.

43.     Third Party Defendant A&J refused to authorize Third Party Defendant Capital Title to release the deposit monies.

## COUNT I
### (Breach Of Contract – A&J)

Third Party Plaintiff realleges and reasserts herein paragraphs 1 through 43, supra.

44.     At all times material hereto, Third Party Defendant Rose represented that he had authority to act for and to bind Third Party Defendant A&J with respect to the purchase of the Units.

45.     Third Party Defendant Rose did, in fact, have authority to act for and to bind Third Party Defendant A&J with respect to the purchase of the Units.

46.     Third Party Plaintiff was at all material times ready, willing, and able to consummate the transactions contemplated in the Contracts.

47.     Third Party Defendant A&J's failure to exercise good faith and diligence to obtain financing for the purchase of the Units in accordance with the terms of the Contracts constitutes a breach thereof, which breach is the direct and proximate cause of damages sustained by Third Party Plaintiff.

48.     Third Party Defendant A&J's failure to close in accordance with the terms of the Contracts constitutes a breach thereof, which breach is the direct and proximate cause of damages sustained by Third Party Plaintiff.

49.     Third Party Defendant A&J's failure to authorize release of the deposit monies in accordance with the terms of the Contracts constitutes a breach thereof,

Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199    Toll Free (888) 382-9199    Fax (954) 382-9063

which breach is the direct and proximate cause of damages sustained by Third Party Plaintiff.

50.    As a consequence of the foregoing, and pursuant to paragraph 32.1 of each of the Contracts, Third Party Plaintiff is entitled to be paid the two $50,000.00 deposits required by the Contracts.

WHEREFORE, Third Party Plaintiff respectfully demands judgment in its favor and against Third Party Defendant A&J Trust, LLC for:

A.    The two $50,000.00 deposits required by the Contract; or

B.    Should paragraph 32.1 be declared void or voidable for any reason, then all damages permitted by law, including any judgment obtained by 604 NE 14th Avenue LLC, lost sales opportunities, and damages for delays; and

C.    Its attorney's fees and costs, as permitted by the Contracts or in law; and

D.    Such other and further relief as the Court deems just and proper.

## COUNT II
### (Indemnity – A&J)

Third Party Plaintiff realleges and reasserts herein paragraphs 1 through 43, supra.

51.    604 NE 14th Avenue, LLC has alleged that Third Party Plaintiff is liable to it for various reasons.

52.    To the extent that 604 NE 14th Avenue, LLC is found entitled to damages from Third Party Plaintiff, Third Party Plaintiff's liability is entirely vicarious, constructive, derivative, or technical, and Third Party Plaintiff is without fault because Third Party Defendant A&J is entirely liable therefor as a result of its acts, omissions, failures and breaches.

Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199   Toll Free (888) 382-9199   Fax (954) 382-9063

53.     To the extent that 604 NE 14th Avenue, LLC is found entitled to damages from Third Party Plaintiff, Third Party Plaintiff will have suffered damages in discharging the liability of Third Party Defendant A&J.

WHEREFORE, Third Party Plaintiff respectfully requests this Honorable Court to enter judgment in its favor and against Third Party Defendant A&J for all damages permitted by law, the cost of bringing this action, the attorney's fees and costs Third Party Plaintiff incurs in defending the suit brought by 604 NE 14th Avenue, LLC, and any other and further relief as the Court deems just and proper.

### COUNT III
### (Fraud – A&J)

Third Party Plaintiff realleges and reasserts herein paragraphs 1 through 43, supra.

54.     Third Party Defendant A&J represented to Third Party Plaintiff that it and/or Third Party Defendant Rose had the ability and intention to obtain financing and to close on the sales of the Units.

55.     Third Party Defendant A&J represented to Third Party Plaintiff that he and/or Third Party Defendant Rose tendered $50,000.00 deposits on each of the two Units.

56.     Third Party Defendant A&J made those representations with the further intention of inducing Third Party Plaintiff to forego its alternative means of disposing of its right to purchase the Units.

57.     Third Party Defendant A&J did not have a then-present intention of diligently seeking financing in good faith or of closing on the sales of the Units.

58.     Third Party Plaintiff reasonably, and to its detriment, relied upon Third Party Defendant A&J's representations by, among other things, foregoing its alternative means of disposing of its right to purchase the Units.

9

59.     Additionally, Third Party Defendant A&J fraudulently and contrary to the agreement of the parties, instructed Third Party Defendant Capital Title not to present, cash, or otherwise submit for payment the two $50,000.00 checks submitted along with the Contracts as deposits on the Units.

60.     As a direct and proximate result of Third Party Defendant A&J's misrepresentations, Third Party Plaintiff has sustained substantial damages, including but not limited to keeping the Units off of the market based on the assumption that two $50,000.00 deposits had been placed on the properties, as well as foregoing the opportunity to immediately rescind the sale contracts it had entered with the owner of the property who has sued for recovery of the nearly $300,000.00 in deposits that Third Party Plaintiff placed on the properties. Should the owner be successful in that action, the judgment will constitute damages caused by Third Party Defendant A&J, for which Third Party Plaintiff will, without limitation, seek recovery from Third Party Defendant A&J herein.

WHEREFORE, Third Party Plaintiff Third Party Plaintiff Development, LLC respectfully requests this Honorable Court to enter judgment in its favor and against Third Party Defendant A&J for all damages permitted by law, the cost of bringing this action, and any other and further relief as the Court deems just and proper.

## COUNT IV
### (Fraud – Rose)

Third Party Plaintiff realleges and reasserts herein paragraphs 1 through 43, supra.

61.     Third Party Defendant Rose represented to Third Party Plaintiff that he and/or Third Party Defendant A&J had the ability and intention to obtain financing and to close on the sales of the Units.

10

62. Third Party Defendant Rose represented to Third Party Plaintiff that he and/or Third Party Defendant A&J tendered $50,000.00 deposits on each of the two Units.

63. Third Party Defendant Rose made those representations with the further intention of inducing Third Party Plaintiff to forego its alternative means of disposing of its right to purchase the Units.

64. Third Party Defendant Rose did not have a then-present intention of diligently seeking financing in good faith or of closing on the sales of the Units.

65. Third Party Plaintiff reasonably, and to its detriment, relied upon Third Party Defendant Rose's representations by, among other things, foregoing its alternative means of disposing of its right to purchase the Units.

66. Additionally, Third Party Defendant Rose fraudulently and contrary to the agreement of the parties, instructed Third Party Defendant Capital Title not to present, cash, or otherwise submit for payment the two $50,000.00 checks submitted along with the Contracts as deposits on the Units.

67. As a direct and proximate result of Third Party Defendant Rose's misrepresentations, Third Party Plaintiff has sustained substantial damages, including but not limited to keeping the Units off of the market based on the assumption that two $50,000.00 deposits had been placed on the properties, as well as foregoing the opportunity to immediately rescind the sale contracts it had entered with the owner of the property who has sued for recovery of the nearly $300,000.00 in deposits that Third Party Plaintiff placed on the properties. Should the owner be successful in that action, the judgment will constitute damages caused by Rose, for which Third Party Plaintiff will, without limitation, seek recovery from Third Party Defendant Rose herein.

Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199    Toll Free (888) 382-9199    Fax (954) 382-9063

WHEREFORE, Third Party Plaintiff Third Party Plaintiff Development, LLC respectfully requests this Honorable Court to enter judgment in its favor and against Third Party Defendant Jeff Rose for all damages permitted by law, the cost of bringing this action, and any other and further relief as the Court deems just and proper.

## COUNT V
### (Civil Theft – Rose)

Third Party Plaintiff realleges and reasserts herein paragraphs 1 through 43, supra.

68.    This is an action for damages for civil theft brought pursuant to Section 772.11 Florida Statutes, in excess of $15,000.00, exclusive of interest, costs and attorney's fees, arising out of the transaction and occurrences described above.

69.    Third Party Defendant Rose knowingly obtained or used, or endeavored to obtain or to use the property to which Third Party Plaintiff had superior rights and/or interest with an intent to (a) either temporarily or permanently deprive Third Party Plaintiff of a right to the property or the benefit of the property; and/or (b) appropriate the property to Third Party Defendant Rose's own use or to the use of any person not entitled to the use of the property.

70.    At all times material hereto, Third Party Defendant Rose acted with felonious intent to commit theft.

71.    Third Party Defendant Rose's conduct constitutes the crime of theft.

72.    Before filing this action for civil theft, Third Party Plaintiff made written demand on Third Party Defendant Rose to pay the treble damage amount of the stolen funds in accordance with the requirements of Section 772.11, Florida Statutes.   A true and correct copy of Third Party Plaintiff's written demand is attached hereto as Exhibit C.

12

73.     Third Party Defendant Rose failed and/or refused to pay Third Party Plaintiff the amount demanded.

74.     Pursuant to Section 772.11, Florida Statutes, Third Party Plaintiff is entitled to recover treble damages from Third Party Defendant Rose, plus costs, interest and attorney's fees.

WHEREFORE, Third Party Plaintiff Third Party Plaintiff respectfully demands judgment in its favor and against Third Party Defendant Rose, to include recovery of all damages permitted by law, attorney's fees and costs, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

**COUNT VI**
(Negligence – Capital Title)

Third Party Plaintiff realleges and reasserts herein paragraphs 1 through 43, supra.

75.     Third Party Defendant Capital Title received the Contracts and the deposits.

76.     Upon receipt of the Contracts and the deposits, Third Party Defendant Capital Title came under a duty at law to handle and hold the deposits in thereby became bound by the terms therein concerning the disposition of the deposits.

77.     Third Party Defendant Capital Title breached the terms of the Contracts concerning the disposition of the deposits by, among other things, failing to retain deposit those funds in the appropriate accounts and failing to leave said deposits in trust until receipt of joint direction from the signators of the Contracts.

78.     Third Party Plaintiff has sustained substantial damages as a direct and proximate result of Third Party Defendant Capital Title's failure to deposit, retain, and

13
Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199   Toll Free (888) 382-9199   Fax (954) 382-9063

otherwise properly handle the two $50,000.00 checks submitted along with the Contracts.

WHEREFORE, Third Party Plaintiff respectfully requests this Honorable Court to enter judgment in its favor and against Third Party Defendant Capital Title for all damages permitted by law, attorney's fees as allowed by the Contracts, the cost of bringing this action, and any other and further relief as the Court deems just and proper.

### COUNT VII
### (Delivery of Worthless Check - Rose)

Third Party Plaintiff realleges and reasserts herein paragraphs 1 through 9, supra.

79.    On or about May 20, 2009, A&J delivered check no. 1028, drawn on Wachovia Bank, N.A. for payment to Joseph Casalena in the amount of $5,000.00. A true and correct copy of the check is attached hereto as composite Exhibit D.

80.    Mr. Casalena presented to the check to Wachovia bank for payment.

81.    Wachovia informed Mr. Casalena that the account on which the check was written had been closed before the date of the check. Therefore, the check was not honored.

82.    On or about July 17, 2009, in compliance with Florida Statutes, section 68.065, a written demand was made on A&J, demanding payment in full for the amount of each of the identified checks, plus a service charge of 5% of the face amount as permitted by law. A true and correct copy of the written demand is attached hereto as Exhibit E.

83.    A&J failed to comply with the demand.

84.    Under Florida Statutes, section 68.065, A&J is liable to Mr. Casalena for the face amount of each check, damages in the amount of triple the face amount of each

14

CASE NO. CACE 08-09821 (04)

check, a service charge of 5% on each check, plus court costs, bank fees, and attorney's fees.

WHEREFORE, Joseph Casalena demands judgment in its favor and against A&J Trust, LLC, for damages, interest, the cost of bringing this action, attorney's fees, and all other relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail to A&J Trust, LLC and Jeff Rose, 17416 S.W. 35th Court, Miramar, FL 33029, this 16th day of October, 2009.

LEIBY STEARNS & ROBERTS, P.A.
Attorneys for Third Party Plaintiff

By: _____

ROBERT S. TANNER
FBN: 728284

21.0801

Leiby Stearns and Roberts, P.A.
1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199   Toll Free (888) 382-9199   Fax (954) 382-9063

Jul. 25. 2007  8:20PM                          No.6207  P. 1

07/21/2007  18:42   9543779037          RDMAX PARTNERS                    PAGE  13/23

## REALTORS ASSOCIATION OF GREATER FORT LAUDERDALE

1      **DEPOSIT RECEIPT AND CONTRACT FOR SALE AND PURCHASE**
2         (If FHA, VA or CONDOMINIUM/HOMEOWNER'S ASSOCIATION CONTRACT, ADDENDUM REQUIRED)

3  BUYER _____ A & J Realty Trust  or assigns ( to an entity it controls)
4  SELLER _____ JIC Developers LLC (Joe Capalase)
5  Buyer and Seller agree Seller shall sell and Buyer shall buy the following real property ("Real Property") and personal
6  property ("Personalty") (collectively "Property") upon the terms and conditions and any addendum to this Contract.
7  1. LEGAL DESCRIPTION of Real Property located in _____ Broward _____ County, FL.
8  Property known as Victoria Landing Unit # 1 _____
9  _____ TAX FOLIO #: _____

10 1.1 PROPERTY ADDRESS: __604__ N.E. 15 Ave _____ Fort Lauderdale _____ 37304
11                              (Address)                     (City)           (Zip)
12 1.2 Seller represents the Property can be used for the following purposes: __ Residential _____

13 2.  PURCHASE PRICE: (In U.S. funds) .................................... $       740,000.00
14                         Seven Hundred Forty Thousand

15 2.1 Deposit made at the time Buyer executed this document .................. $      50,000.00
16 2.2 Additional deposit due within _____ United States business days after Effective Date.
17      Time is of the essence as to ALL deposits ............................... $_____
18      All Deposits to be held by: _____ c Barrett & Associates _____ ("Escrow Agent")
19 2.3 Amount of new note and mortgage to be executed by Buyer to any lender other than Seller .. $      629,000.00
20      Type of mortgage:
21      (CHECK ONE) (X) Conventional, ( ) FHA, ( ) VA (If FHA or VA see Addendum)
22      (CHECK ONE) (X) Prevailing Rate & Terms; OR ( ) Interest Rate ____% & Term ____ Years
23      (CHECK ONE) (X) Fixed Rate, ( ) Variable rate with a maximum ceiling of ____%
24      Other terms: _____
25 2.4 Existing mortgage balance encumbering the Real Property
26      to be ASSUMED by Buyer approximately .................................. $_____
27      Mortgagee Name _____ Loan # _____
28      (CHECK ONE) ( ) Fixed rate not to exceed the rate of ____%
29                  ( ) Variable current rate with a maximum ceiling of ____%
30      Balloon Mortgage: ( ) Yes  ( ) No   Balloon Due Date: _____
31      Other terms: _____
32 2.5 Purchase money note to Seller secured by a ( ) 1st (X) ( ) 2nd purchase money mortgage,
33      bearing interest at the rate of ____% per annum with payments based on ____ years
34      amortization OR payable $ _____ principal and interest per _____ .......... $_____
35      Balloon Mortgage: ( ) Yes  ( ) No   Balloon Due Date: _____
36      Due on sale: ( ) Yes  ( ) No   No prepayment penalty.
37 2.6 Other consideration: _____ $_____
38 2.7 Approximate payment due at closing as described in paragraph 27.) .......
39      (This does not include closing costs and prepaid items) .................. $      61,000.00

40 2.8 PURCHASE PRICE .................................................. $      740,000.00

41 3.  CLOSING DATE: This Contract shall be closed and the deed and possession shall be delivered on or before
42  _____ TBA _____, 20__ ("Closing Date") unless extended by other provisions of this Contract or
43  separate agreement.
44 4.  TIME FOR ACCEPTANCE: If, by 5:00 p.m. _____, 20__, this offer is not
45  executed by all parties and a copy delivered to all parties or their Authorized Representative, this offer is withdrawn and
46  all deposits will be returned to Buyer.

This software is licensed to (name) - Castelli Real Estate Services) www.transactiondesk.com.

From #1001                              Page 1 of 10                         Revised 6/30/2006

**EXHIBIT**
_A_

07/21/2007  10:42    9543775037              REMAX PARTNERS              NYSE  16/23

Property Address:  604  N.E. 16 Ave                  Fort Lauderdale   #/   33304

47  5.  PERSONALTY INCLUDED: All fixed items including: all landscaping; window screens, window treatments and
48  hardware; wall-to-wall or attached floor coverings and attached lighting fixtures as now installed on the Real Property.
49  Also included are the following checked items:  ( ) range, (X) oven, (X) refrigerator, (X) dishwasher, (X)
50  disposal, (X) microwave oven, ( ) trash compactor, (X) washer, (X) dryer, ( ) ceiling fans (___ # of fans),
51  ( ) solar equipment, ( ) satellite dishes, ( ) security/alarm system, (X) pool cleaning equipment (DESCRIBE):
52  _____
53  5.1  ADDITIONAL PERSONALTY INCLUDED: _____
54  _____
55  _____
56  5.2  PERSONALTY NOT INCLUDED: _____
57  5.3  LEASED ITEMS: ( ) security/alarm systems, ( ) propane tanks, ( ) solar equipment, ( ) satellite dishes,
58  Other: _____
59  6.  FACSIMILE/COUNTERPARTS: A legible facsimile copy of this entire Contract and any signatures shall be
60  considered as originals. This Contract may be signed in counterparts and taken together shall be considered an original.
61  7.  EFFECTIVE DATE: The Effective Date of this Contract (the "Effective Date") shall be the day upon which it becomes
62  fully executed by all parties and a copy delivered to all parties or their Authorized Representative.
63  8.  TIME AND BUSINESS DAYS DEFINED: All time periods will be measured in business days unless otherwise
64  indicated. A "business day" is every calendar day except Sunday, Sunday and national legal holidays. If any time
65  period ends on a Saturday, Sunday or national legal holiday, performance will be due the next business day. All time
66  periods will end at 5:00 p.m. local time in the county where the Real Property is located.
67  9.  DELIVERY TO AUTHORIZED REPRESENTATIVE: Delivery of any document required or permitted by this
68  Contract to be delivered to Buyer or Seller shall be deemed to be delivered when delivery has been made to such party's
69  Authorized Representative ("Authorized Representative").
70  9.1  DEFINITION OF AUTHORIZED REPRESENTATIVE: Authorized Representative shall include:
71  9.1.1 any licensed Florida attorney representing Buyer or Seller in this transaction (as to the party the attorney represents);
72  9.1.2 any person specifically authorized in writing by Buyer or Seller to receive documents;
73  9.1.3 as to Seller, the Florida real estate licensee(s) shown as listing sales associate(s) and the active broker(s) ("Broker")
74  of licensee's real estate firm;
75  9.1.4 as to Buyer, the Florida real estate licensee(s) presenting this document to Seller or Seller's Authorized
76  Representative and the active broker(s) ("Broker") of licensee's real estate firm.
77  10.  EVIDENCE OF TITLE: Seller shall, at Seller's expense, furnish to Buyer or Buyer's closing agent not less than
78  fifteen (15) business days prior to the Closing Date either: I) a certified abstract of title which shall commence with the
79  earliest public records with certified search through the Effective Date; or 2) a prior owner's title insurance policy issued
80  by a currently licensed title insurance company and partial certified abstract or certified search from the date of such
81  policy through the Effective Date. Seller shall convey a marketable title, subject only to liens, encumbrances, exceptions
82  or qualifications set forth in this Contract and those which shall be discharged by Seller at or before closing. Marketable
83  title shall be determined according to applicable Title Standards adopted by The Florida Bar and in accordance with the law.
84  10.1  PALM BEACH COUNTY: If the Real Property is located in Palm Beach County, Seller shall, at Seller's expense,
85  deliver to Buyer, a title insurance commitment and policy issued by a Florida licensed title insurer acceptable to major
86  institutional lenders located in Palm Beach County agreeing to issue to Buyer, upon recording of the deed, an owner's
87  policy of title insurance in the amount of the Purchase Price, insuring marketable title in Buyer to the Real Property
88  subject only to liens, encumbrances, exceptions or qualifications set forth in this Contract and those which shall be
89  discharged by Seller at or before closing.
90  10.2  RESERVATIONS: A right of entry in connection with oil, mineral or gas reservations shall constitute a title defect
91  unless such right of entry is prohibited by government regulations.
92  10.3  TITLE DEFECTS: Buyer shall have ten (10) business days from the date of receiving evidence of title to examine
93  same. If title is found to be defective, Buyer shall within said period, notify Seller in writing specifying the defects. If
94  such defects render the title unmarketable, Seller shall have thirty (30) business days from the receipt of such notice to
95  cure the defects, and if after said period Seller shall not have cured the defects, Buyer shall have the option of: 1)
96  accepting title as it then is; or 2) terminating this Contract by delivery of written notice to Seller or his Authorized
97  Representative, and deposits shall be returned to Buyer and all parties shall be released from all further obligations
98  herein.
99  11.  SURVEY: Buyer, at Buyer's expense, within the time allowed to deliver evidence of title and to examine same, may
100  have the Real Property surveyed and certified by a registered Florida surveyor. If the survey shows encroachment on the

Form 81001                                  Page 2 of 10                       Revised 6/26/2006

Case 0:10-cv-60389-JIC Document 1-2 Entered on FLSD Docket 03/16/2010 Page 42 of 77

Property Address: ___ N.E. 16 Ave ___                     Fort Lauderdale   #1   33304

101 Real Property or that improvements located on the Real Property encroach on setback lines, easements, lands of others,
102 or violate any restrictions, contract covenants or applicable governmental regulation, the same shall constitute a title
103 defect. If the Real Property is located east of the Intracoastal Waterway the Coastal Construction Control Line as defined
104 in F.S. 161.053 may affect it.

105 12. CONVEYANCE: Seller shall convey title to the Real Property by statutory warranty or fiduciary special warranty
106 deed, if applicable, subject only to land use designation, zoning restrictions, prohibitions and other requirements
107 imposed by governmental authority; restrictions, easements and matters appearing on the plat or otherwise common to
108 the subdivision; public utility easements of record which are located contiguous to the Real Property lines and not more
109 than twelve (12) feet in width as to the rear or front lines and seven and one-half (7.5) feet in width as to the side lines
110 (unless otherwise specified herein); taxes for year of closing and subsequent years; assumed mortgages and purchase
111 money mortgages (provided there exists at closing no violation of the foregoing and none of them prevents the use of the
112 Real Property for the purpose represented in this Contract); matters contained in this Contract and matters otherwise
113 accepted by Buyer. Personalty shall, at request of Buyer, be transferred by an absolute bill of sale with warranty of title,
114 subject only to such matters as are otherwise provided herein.

115 13. EXISTING MORTGAGES: If Buyer is assuming an existing mortgage, Seller shall obtain and furnish a statement
116 from the mortgagee setting forth the principal balance, method of payment, interest rate and whether the mortgage is in
117 good standing. If there are charges for the change of ownership, including charges for assumption, they shall be paid by
118 Buyer unless the total charges exceed one percent (1%) of the unpaid balance of the mortgage to be assumed. If the total
119 cost of the above items exceed one percent (1%) of the unpaid balance of the mortgage to be assumed, then either party
120 shall have the option of paying any amount in excess so the entire cost is paid, and this Contract shall remain in full
121 force and effect. However, if neither party agrees to pay the additional amount, then either party may terminate this
122 Contract by delivery of written notice to the other party or his Authorized Representative, and deposits shall be returned
123 to Buyer and all parties shall be released from all further obligations herein.

124 13.1 APPLICATION AND QUALIFICATION: Buyer shall make application for assumption of the existing mortgage
125 within _____ business days (five (5) business days if the blank is not filled in) after the Effective Date. Buyer agrees
126 to make a good faith, diligent effort to assume this existing mortgage and agrees to execute all documents required by the
127 mortgagee for the assumption. If the mortgagee does not give written consent to permit the Buyer to assume the existing
128 mortgage at the rate and terms of payment specified herein within _____ business days (twenty (20) business days if
129 this blank is not filled in) after the Effective Date, either party may terminate this Contract by delivery of written notice
130 to the other party or his Authorized Representative, and deposits shall be returned to Buyer and all parties shall be
131 released from all further obligations herein. This right of termination shall cease upon Buyer obtaining written approval
132 for assumption of the mortgage prior to delivery of the notice of termination.

133 13.2 VARIANCE: Any variance in the amount of a mortgage to be assumed and the amount stated in this Contract shall
134 be added to or deducted from the cash payment. If the mortgage balance is more than three percent (3%) less than the
135 amount indicated in this Contract, Seller shall have the option of adjusting the Purchase Price to an amount where the
136 differential is no more than three percent (3%), and if Seller declines to do so, then either party may terminate this
137 Contract by delivery of written notice to the other party or his Authorized Representative, and deposits shall be returned
138 to Buyer and all parties shall be released from all further obligations herein. This notice must be given not less than five
139 (5) business days prior to closing.

140 13.3 DISPOSITION OF ESCROW BALANCE: If Buyer assumes a mortgage, Seller shall receive as credit at closing an
141 amount equal to the escrow funds held by the mortgagee, which funds shall thereupon be transferred to Buyer.

142 14. NEW MORTGAGES: If Buyer executes a mortgage, all related costs and charges shall be paid by Buyer. Except as
143 provided below, any purchase money note and mortgage to Seller shall follow a form with terms generally accepted and
144 used by institutional lenders doing business in the county where the Real Property is located. A purchase money
145 mortgage shall provide for an annual proof of payment of taxes and insurance against loss by fire with extended
146 coverage in an amount not less than the full insurable value of the improvements. A first mortgage and note shall
147 provide for acceleration at the option of the holder after thirty (30) calendar days default; for junior mortgages this shall
148 be ten (10) calendar days. The note shall provide for a late charge of five percent (5%) of the payment due if payment is
149 received after ten (10) calendar days after the due date and mortgagee has not elected to
150 accelerate. Junior mortgages shall require the owner of the Real Property encumbered to keep all prior liens and
151 encumbrances in good standing and shall forbid the owner from accepting modifications or future advances under any
152 prior mortgages. Any prepayment shall apply against principal amounts last maturing.

Case 0:10-cv-60389-JIC Document 1-2 Entered on FLSD Docket 03/16/2010 Page 43 of 77

Jul.25. 2007  8:22PM                                      No.6287  P. 4

87/25/2007  18:42    9543775837         REMAX PARTNERS          PAGE  16/23

Property Address: ___ N.E. 14 Ave    Fort Lauderdale  FI  33304

153  14.1 PREQUALIFICATION: Within ____ business days (five (5) business days if this blank is not filled in) after
154  the Effective Date, Buyer shall provide to Seller a letter from a lender stating that, based on a review of Buyer's
155  application and credit report, Buyer is prequalified for the mortgage loan indicated in Paragraph 2.1. If Buyer fails to
156  provide such letter within that time, Seller may terminate this Contract by delivery of written notice to Buyer or his
157  Authorized Representative and deposits shall be returned to Buyer and all parties shall be released from all further
158  obligations herein. This right of termination shall cease upon Buyer obtaining a loan commitment prior to delivery of the
159  notice.
160  14.2 APPLICATION AND QUALIFICATION: If this Contract provides for Buyer to obtain new mortgage financing,
161  then Buyer's performance under this Contract shall be contingent upon Buyer obtaining said mortgage financing upon
162  the terms stated, or if none are stated, then upon the terms generally prevailing at such time in the county where the Real
163  Property is located. Buyer agrees to apply within ____ business days (five (5) business days if this blank is not
164  filled in) after the Effective Date and to make a good faith, diligent effort to obtain mortgage financing. The commission
165  or omission of any act by Buyer calculated to produce a rejection by any mortgage lender shall be a default by Buyer.
166  14.3 RELEASE OF INFORMATION: Buyer authorizes their mortgage broker and/or lender to provide information to
167  Buyer, Seller and Bank Authorized Representatives in accordance with Section VII of the Gramm-Leach-Bliley Act. The
168  information to be provided is limited to information necessary to verify that Buyer is complying with this Contract and
169  that there has been no material change in any information provided.
170  14.4 FAILURE TO OBTAIN LOAN COMMITMENT: If within ___30___ business days (thirty (30) business days if
171  this blank is not filled in) after the Effective Date, or by the Closing Date, whichever occurs sooner, Buyer fails to obtain
172  a loan commitment, or after diligent effort Buyer is not able to comply with the terms and conditions of the loan
173  commitment, and Buyer does not waive Buyer's rights under this subparagraph within the time stated for obtaining the
174  commitment, then either party may terminate this Contract by delivery of written notice to the other party or his
175  Authorized Representative, and deposits shall be returned to Buyer and all parties shall be released from all further
176  obligations herein. This right of termination for failure to obtain a loan commitment shall cease upon Buyer obtaining a
177  loan commitment prior to delivery of the notice of termination.
178  15. INSPECTIONS, REPAIR AND MAINTENANCE: Buyer shall have the right, at Buyer's expense, to have roof,
179  seawall, dock, pool, electrical, plumbing, sprinkler system, window, septic system, radon, mold, hazardous substance,
180  environmental, wood destroying organism, air conditioning and heating system, appliances, mechanical, structural and
181  other inspections made by a person who specializes in and holds an occupational license (if required by law) to conduct
182  such inspections or who holds a Florida license to repair and maintain the items inspected ("Professional Inspector"). All
183  written reports of Buyer's inspections, together with the estimated cost of repairs and treatments, shall be delivered to
184  Seller or Seller's Authorized Representative within _____ business days (fifteen (15) business days if this blank is not
185  filled in) after the Effective Date except any wood destroying organism inspection report shall be delivered not later than
186  fifteen (15) business days prior to the Closing Date. If such reports and estimates are not delivered within the stated
187  time, Buyer is deemed to have accepted the Property "As Is."
188  15.1  DISPUTES: If Seller disagrees with Buyer's inspection reports, Seller shall have the right to have inspections of
189  the disputed items made at Seller's expense by Professional Inspectors. All written reports of Seller's inspections
190  together with the estimated cost of repairs and treatments shall be delivered to Buyer or Buyer's Authorized
191  Representative within five (5) business days from the date Seller receives Buyer's report. If Buyer's and Seller's
192  inspection reports do not agree, Buyer and Seller shall agree on a third Professional Inspector, whose report shall be
193  binding. The cost of the third Professional Inspector shall be paid equally by Buyer and Seller. Any third such binding
194  inspector shall be agreed upon, and said inspection ordered, within five (5) business days from date of delivery of
195  Seller's inspection report(s) to Buyer.
196  15.2  DEFECTS: If inspections reveal functional defects, code violations, open building permits, the existence of radon,
197  mold, hazardous substances, environmental pollution, or wood destroying organism infestation or damage, the cost of
198  correction, treatment and repair shall be at the expense of Seller and shall be performed in a workmanlike manner.
199  15.2.1 WOOD DESTROYING ORGANISMS: Wood destroying organisms means arthropod or plant life which
200  damages and can re-infest seasoned wood in a structure, namely: termites, powder-post beetles, oldhouse borers, wood-
201  decaying fungi.
202  15.2.1.1 TREATMENT: Seller shall have the Property treated and any tenting removed at least two (2) business days
203  before the Closing Date by a licensed pest control company if required to obtain a clear wood destroying organisms
204  report.
205  15.2.1.2 WOOD DAMAGE: Seller shall repair at least two (2) business days before the Closing Date all wood damage
206  required to obtain a clear wood destroying organisms report.

Form 1601  [illegible]  [illegible]  Page 4 of 10          Revised 6/30/2006

07/21/2007  18:42     9543775837              REMAX PARTNERS              PAGE  17/23

Property Address:  One  N.E. 14 Ave                 Fort Lauderdale    Fl  33304

207  15.2.2 EXCLUSIONS:
208  15.2.2.1 AGE AND AESTHETIC DEFECTS: Age alone is not a functional defect nor are aesthetic defects which
209  include: cracked or broken roof tiles; pitted marble; missing or torn window screens or screen doors (excluding pool or
210  patio screen enclosures); fogged windows; tears, worn spots and discoloration of floor coverings, wallpapers, window
211  treatments; nail holes; scratches, dents, scrapes, chips and caulking in ceilings, walls, flooring, tile, fixtures, mirrors; and
212  minor cracks in floor tiles, windows, driveways, sidewalks, pool decks, garage and patio floors.
213  15.2.2.2 CODE: Seller is not obligated to bring any item into compliance with existing building code regulations if such
214  item complied with the building code or was granted a certificate of occupancy at the time it was constructed.
215  15.2.2.3 FENCES AND UTILITY BUILDINGS: Wood destroying organism infestation or damage in fences or utility
216  structures more than three (3) feet from any residential structure is not a defect.
217  15.2.2.4 EXISTING WOOD DESTROYING ORGANISMS WARRANTY: Seller is not obligated to treat the Property
218  if all of the following apply:  1) there is no visible live infestation and 2) the Property has been previously treated and 3)
219  assignment at closing from Seller to Buyer of a current full-treatment warranty that has at least twelve (12) months to
220  run is accepted by the warrantor and 4) Buyer's lender (if any) is willing to close with the above.
221  15.3 LIMITATION: If the cost of repairs and treatments exceeds _____
222  (one percent (1%) of the Purchase Price if this blank is not filled in), Buyer or Seller may elect to pay the excess, failing
223  which, either party may terminate this Contract by delivery of written notice to the other party or his Authorized
224  Representative and deposits shall be returned to Buyer and all parties shall be released from all further obligations
225  herein.
226  15.4 COMPLETION DATE AND ESCROW FOR REPAIRS: Seller shall complete all corrections, treatments and
227  repairs at least two (2) business days before the Closing Date and, if not, sufficient funds shall be escrowed at closing to
228  effect such corrections, treatments and repairs, unless prohibited by Buyer's lender. Funds equal to 150% of the
229  maximum estimate for corrections, treatments and repairs as set forth in the inspection reports shall be deemed sufficient
230  funds.
231  15.5 WALK THROUGH INSPECTION: Buyer is entitled to a walk through inspection immediately prior to closing to
232  verify compliance with this section and to verify that no functional defects have occurred subsequent to the inspections.
233  All appliances and machinery included in this sale shall be in working order at closing.
234  15.6 UTILITIES: Seller shall provide utility services for all inspections including walk-thru inspections and until
235  closing is completed. All parties and their Authorized Representatives shall be given reasonable prior notice of all
236  inspections and shall have the right to be present at all inspections.
237  15.7 MAINTENANCE: Between the Effective Date and the closing, Seller shall maintain the Property, including but not
238  limited to the lawn, shrubbery and pool in the same condition as it was on the Effective Date, ordinary wear and tear
239  excepted. Seller shall vacate the Property and remove all furniture and personal items not included in this sale and leave
240  the Property in a clean, broom-swept condition before the time set for closing.
241  16. ENVIRONMENTAL CONDITION: Seller represents that Seller is not aware of any prior or existing environmental
242  condition, situation or incident on, at, or concerning the Property or any adjacent property that may give rise to against
243  Seller or the Property to an action or to liability under any law, rule, ordinance or common law theory.
244  17. INSURANCE: If insurance cannot be obtained because of tropical storm activity, either party may delay closing
245  until tropical storm activity no longer prevents acquisition of insurance.
246  18. SERVICE CONTRACTS:  Buyer may accept or reject continuation of service contracts, provided they are
247  assignable to Buyer. If accepted, the cost shall be prorated. Buyer shall pay any transfer fee.
248  19. INGRESS AND EGRESS: Seller warrants there is ingress and egress to the Real Property over public or private
249  roads or easements.
250  20. LEASES: Unless indicated under Special Clauses, at closing there shall be no lease or right of occupancy
251  encumbering the Real Property. If this Contract is subject to leases or rights of occupancy which will continue after
252  closing, Seller shall, ten (10) business days prior to the Closing Date, furnish to Buyer copies of all written leases or
253  written rights of occupancy and estoppel letters from each tenant specifying the nature and duration of said tenant's
254  occupancy, rental rate, prepaid rents or security deposits paid by tenant. If Seller is unable to obtain estoppel letters from
255  tenants, the same information may be furnished by Seller to Buyer in the form of a Seller's affidavit. Advance rents
256  shall be prorated and deposits credited to Buyer at closing.
257  21. SELLER'S AFFIDAVIT:  Seller shall furnish to Buyer at closing an affidavit attesting to the absence of any
258  financing statements, claims of lien or potential lienors known to Seller. If the Real Property has been improved within
259  ninety (90) calendar days prior to closing, Seller shall deliver to Buyer an affidavit setting forth the names and addresses
260  all contractors, subcontractors, suppliers and material men and stating that all bills for work on the Real Property have

Case 0:10-cv-60389-JIC   Document 1-2   Entered on FLSD Docket 03/16/2010   Page 45 of 77

Property Address:   606  N.E. 14 Ave                    Fort Lauderdale   #1   33304

261 been paid. Buyer may require releases of all such potential liens. The affidavit shall state that there are no matters
262 pending against Seller that could give rise to a lien that would attach to the Property between the disbursing of the
263 closing funds and the recording of the instrument of conveyance and that Seller has not, and will not, execute any
264 instrument that could adversely affect title to the Property.
265 22. DOCUMENTS FOR CLOSING: If applicable, Seller shall cause to be prepared and provided a deed, purchase
266 money mortgage and note, assignment of leases, bill of sale, Seller's affidavit, FIRPTA affidavit, survey or affidavit
267 regarding coastal construction control line, F.S. 161.57, and any corrective instruments that may be required in
268 connection with perfecting the title. Buyer's closing agent shall prepare the closing statement.
269 23. EXPENSES: Abstracting prior to closing, governmental lien searches, cost of obtaining payoff and estoppel letters,
270 state documentary stamps on the deed and the cost of recording any corrective instruments shall be paid by Seller.
271 Intangible personal property taxes and documentary stamps to be affixed to the purchase money mortgage or required on
272 any mortgage modification, the cost of recording the deed and purchase money mortgage and documentary stamps and
273 recording costs assessed in connection with assumption of any existing mortgage shall be paid by Buyer.
274 24. PRORATION: Taxes, insurance, assumed interest, utilities, rents and other expenses and revenue of the Property
275 shall be prorated through the day prior to closing. Taxes shall be prorated on the current year's tax. If available, if the
276 closing occurs when the current year's taxes are not available, and the current year's assessment is available, taxes will
277 be prorated based upon such assessment and the prior year's millage. If the current year's assessment is not available,
278 then taxes will be prorated on the prior year's tax; provided, if there are completed improvements on the Property by
279 January 1st of the year of closing and these improvements were not in existence on January 1st of the prior year, then the
280 taxes shall be prorated through the day prior to closing based upon the prior year's millage and at an equitable
281 assessment to be agreed upon between the parties, failing which, request will be made to the county tax assessor for an
282 informal assessment taking into consideration the improvements. Any tax proration based on an estimate may, at the
283 request of either party, be subsequently readjusted upon receipt of the tax bill. All such prorations whether based on
284 actual tax or estimated tax will make appropriate allowance for the maximum allowable discount and for homestead or
285 other exemptions if allowed for the current year. The provisions in this paragraph shall survive the closing.
286 25. SPECIAL ASSESSMENT LIENS: Certified, confirmed and ratified governmental special assessment liens as of the
287 Effective Date are to be paid by Seller. Pending liens as of the Effective Date shall be assumed by Buyer. The provisions
288 in this paragraph shall survive the closing.
289 26. PLACE OF CLOSING: Closing shall be held at the office of the Buyer's closing agent if located within the county
290 where the Real Property is located, and if not, then at the office of Seller's closing agent if located within the county
291 where the Real Property is located, and if not, then at such place as mutually agreed upon. If a portion of the Purchase
292 Price is to be derived from institutional financing, the requirements of the lender as to place, time and procedures for
293 closing shall control, notwithstanding anything in this Contract to the contrary.
294 27. PROCEEDS OF SALE AND CLOSING PROCEDURE: The deed shall be recorded and evidence of the title
295 continued at Buyer's expense to show title in Buyer without any encumbrances or changes which would render Seller's
296 title unmarketable from the date of the last evidence, and the cash proceeds of sale may be held in escrow by Seller's
297 attorney or by such other escrow agent as may be mutually agreed upon for a period of not longer than ten (10) business
298 days. If Seller's title is rendered unmarketable, Buyer's closing agent shall, within said ten (10) day period, notify Seller
299 in writing of the defect, and Seller shall have thirty (30) business days from receipt of such notice to cure the defect and
300 shall use best efforts to do so. If Seller fails to timely cure the defect, all monies paid by Buyer shall, upon written
301 demand and within five (5) business days thereafter, be released to Buyer, and simultaneously with such repayment
302 Buyer shall vacate the Property and reconvey the Property to Seller by special warranty deed. If Buyer fails to make
303 timely demand for refund, he shall take title "As Is" waiving all rights against Seller as to such intervening defect except
304 such rights as may be available to Buyer by virtue of warranties contained in the deed. Notwithstanding the above, if title
305 insurance is available, at standard rates insuring Buyer as to any title defects arising between the effective date of the title
306 commitment and the recording of Buyer's deed, the proceeds of sale shall be disbursed to Seller at closing. The
307 provisions of this paragraph shall survive the closing.
308 27.1 All payments including loan proceeds shall be made in U.S. funds in the form of a wire transfer, certified check,
309 cashiers check, bank check, official check, treasurer's check, money order or equivalent instrument issued by a bank,
310 savings and loan association, or credit union with at least one branch in the county where the Real Property is located.
311 27.2 Possession and occupancy will be delivered to Buyer at closing and funding. The provisions of this paragraph shall
312 survive the closing.

Jul.25. 2007  3:24PM                                    No.6287   P. 7

07/21/2007  18:42   9543775937          ROMEX PARTNERS          PAGE  19/29

Property Address:   606  N.E.  16 Ave                    Fort Lauderdale   #1   33304

313  27.3  The Broker's professional service fee shall be disbursed simultaneously with Seller's closing proceeds.

314  28. ESCROW DEPOSITS: The provisions of this Section 28 shall survive the termination or closing of this Contract.

315  28.1 The Escrow Agent agrees to promptly deposit, retain, and disburse all deposits in accordance with the terms of this
316  Contract or as may be directed in writing by Seller and Buyer or as may be directed by a court of competent jurisdiction.

317  28.2 If the Escrow Agent is in doubt as to his duties, Escrow Agent shall retain the deposits until Seller and Buyer
318  collectively agree in writing to the disposition thereof or until a court of competent jurisdiction has adjudicated the rights
319  of Seller and Buyer.

320  28.3 If the Escrow Agent is a licensed real estate broker, Escrow Agent shall comply with the provisions of Chapter 475,
321  Florida Statutes, as may be amended from time to time and with any regulations promulgated by the Department of
322  Business and Professional Regulation pertaining to the duties and responsibilities of licensed real estate brokers.

323  28.4 Any suit between Buyer and Seller where Escrow Agent is made a party because of acting as Escrow Agent, or
324  where Escrow Agent interpleads the deposits, Escrow Agent shall recover reasonable attorney's fees and costs from the
325  deposits; such fees and costs shall be charged and assessed against the non-prevailing Buyer or Seller.

326  28.5 The parties agree that Escrow Agent shall not be liable to any party or person for misdelivery to Buyer or Seller of
327  the deposits, unless such misdelivery is due to willful breach of Contract or gross negligence of Escrow Agent.

328  29. RISK OF LOSS: If the improvements are damaged by fire or other casualty before delivery of the deed and can be
329  restored to substantially the same condition as existing on the Effective Date within a period of sixty (60) business days,
330  Seller may restore the improvements and the Closing Date and date of delivery of possession shall be extended
331  accordingly. If Seller fails to do so, Buyer shall have the option of 1) taking the Property "As Is" together with
332  insurance proceeds, if any, or 2) terminating this Contract by delivery of written notice to Seller or his Authorized
333  Representative and deposits shall be returned to Buyer and all parties shall be released from all further obligations
334  herein.

335  30. ASSIGNMENT: This Contract is not assignable without the specific written consent of Seller if new mortgage
336  financing or an assumption of an existing mortgage is a contingency.

337  31. ATTORNEY FEES AND COSTS: In connection with any arbitration or litigation arising out of this Contract, the
338  prevailing party, whether Buyer, Seller or Broker shall be entitled to recover all costs incurred including attorney's fees
339  and legal assistant fees for services rendered in connection therewith, including appellate proceedings and
340  postjudgement proceedings. The provisions in this paragraph shall survive the termination or closing of this Contract.

341  32. DEFAULT: If either party defaults, the rights of the non-defaulting party and the Broker(s) shall be as provided
342  herein and such rights shall be deemed to be the sole and exclusive rights in such event. The provisions of this Section
343  32 shall survive the termination of this Contract.

344  32.1 BUYER DEFAULT: If Buyer fails to perform any of the covenants of this Contract, all money paid or to be paid
345  as deposits by Buyer pursuant to this Contract shall be retained by or for the account of Seller as consideration for the
346  execution of this Contract and as liquidated damages and in full settlement of any claims for damages and specific
347  performance by Seller against Buyer.

348  32.2 SELLER DEFAULT: If Seller fails to perform any of the covenants of this Contract, all money paid or deposited
349  by Buyer pursuant to this Contract shall be returned to Buyer upon demand, or Buyer shall have the right of specific
350  performance. In addition, Seller shall immediately pay to Brokers the full professional service fee provided for in this
351  Contract or separate listing contract.

352  32.3 MEDIATION: Any controversy or claim between Buyer and Seller arising out of or relating to this Contract or a
353  breach thereof may be submitted to mediation prior to arbitration or litigation. The mediator's fees shall be paid equally
354  by the parties of the mediation. Any of the above proceedings shall be brought in the county where the Real Property is
355  located and shall be conducted pursuant to Florida Statutes relating to mediation, arbitration or litigation.

356  33.  CONTRACT NOT RECORDABLE AND PERSONS BOUND: The benefits and obligations of these covenants
357  herein shall inure to and bind the respective heirs, representatives, successors and assigns (when assignment is
358  permitted) of the parties hereto. Neither this Contract nor any notice shall be recorded in any public records.

359  34.  SURVIVAL OF COVENANTS: No provision, covenant or warranty of this Contract shall survive the closing
360  except as expressly provided herein and except express representations and warranties contained herein.

361  35.  CONCURRENCY: No representation is made regarding the ability to change the current use of or to improve the
362  Property under the Local Government Comprehensive Planning and Land Development Regulation Act (Chapter 163 et
363  seq., Florida Statutes) or any comprehensive plan or other similar ordinance promulgated by controlling governmental
364  authorities in accordance with the Act.

Form #1001                          Page 7 of 10                    Revised 6/10/2006

Case 0:10-cv-60389-JIC   Document 1-2   Entered on FLSD Docket 03/16/2010   Page 47 of 77

Property Address:    604  N.E. 34 Ave _____     Fort Lauderdale     Fl  33301

365 36. FIRPTA: The I.R.S. code requires Buyer to withhold ten percent (10%) of the Purchase Price for tax on sales by
366 certain foreigners. The tax will be withheld unless affidavit of compliance with the I.R.S. code or an I.R.S. qualifying
367 statement are provided to Buyer at closing. If this paragraph applies, Buyer and Seller agree to obtain and/or disclose
368 their U.S. Social Security Number or Taxpayers Identification Number if required by the closing agent.

369 37. DISCLOSURES:

370 37.1 RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in
371 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed
372 federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon
373 testing may be obtained from your county public health unit.

374 37.2  MOLD: Mold and/or other microscopic organisms may exist at the Property and such microscopic organisms
375 and/or mold may cause physical injuries, including but not limited to allergic and/or respiratory reactions or other
376 problems, particularly to persons with immune system problems, young children and/or elderly persons.

377 37.3 ENERGY-EFFICIENCY RATING: "In accordance with the Florida Building Energy-Efficiency Rating Act
378 (Chapter 553, Part XII, F.S. (1993)), the Buyer of Real Property with a building for occupancy located thereon is
379 notified that the Buyer may have the building's energy-efficiency rating determined." Buyer acknowledges receipt of the
380 "Florida Building Energy-Efficiency Rating System" Disclosure.

381 37.4 PROPERTY TAX DISCLOSURE SUMMARY: Buyer should not rely on the Seller's current property taxes as the
382 amount of property taxes that the Buyer may be obligated to pay in the year subsequent to purchase. A change of
383 ownership or property improvements triggers reassessments of the property that could result in higher property taxes. If
384 you have any questions concerning valuation, contact the county Property Appraiser's Office for information.

385 37.5 CLOSING COSTS: Buyer may be required to pay additional closing costs, including but not limited to: attorney's
386 fees; casualty, hazard, windstorm and flood insurance premiums; title examination and closing service fees; taxes
387 including property tax proration; recording costs; survey costs; courier fees; tax service fees; underwriting fees;
388 document preparation fees; utility search fees; premiums for owner and mortgage title insurance and endorsements; and
389 costs associated with obtaining financing, such as: application fees, appraisal fees, credit report fees and points or
390 assumption fees.

391 37.6  SELECTION OF SERVICE PROVIDERS: If Broker gives Buyer or Seller referrals to professional persons,
392 service or product providers or vendors of any type, including, but not limited to: lending institutions, loan brokers,
393 attorneys, title insurers, escrow companies, inspectors, structural engineers, pest control companies, contractors and
394 home warranty companies ("Providers"), the referrals are given based on the following disclosure:
395 37.6.1 Buyer and Seller are free to select Providers other than those referred or recommended by Broker.
396 37.6.2 If Buyer or Seller instructs Broker to arrange for any Provider to perform services related to this Contract, Broker
397 makes such arrangements only as Authorized Representative for the account of Buyer or Seller.
398 37.6.3 Broker does not guarantee the performance of any Providers.
399 37.7 Disclosure for real property located partially or totally seaward of the Coastal Construction Control Line defined
400 in F.S. 161.053.
401 "The property being purchased may be subject to coastal erosion and to federal, state, or local regulations that
402 govern coastal property, including the delineation of the coastal construction control line, rigid coastal protection
403 structures, beach nourishment, and the protection of marine turtles. Additional information can be obtained from the
404 Florida Department of Environmental Protection, including whether there are significant erosion conditions associated
405 with the shoreline of the property being purchased."

406 38.  DISCLOSURE OF LATENT DEFECTS: Seller specifically acknowledges and understands that if Seller knows of
407 latent defects (defects not readily observable) materially affecting the value of the Property, then Seller is under a duty
408 to disclose these latent defects to Buyer. Seller represents that if Seller knows of latent defects, they are set forth in
409 writing under Special Clause, below or have been separately disclosed by Seller to Buyer. Seller and Buyer agree to
410 indemnify and hold harmless Broker from damages resulting from the inaccuracy of this information except to the extent
411 Broker was aware of latent defects and did not disclose them to Buyer.

412 39.  DISCLOSURE SUMMARY FOR MANDATORY HOMEOWNERS' ASSOCIATION/COMMUNITY: For all
413 properties which are not condominiums or cooperative apartments:  The Homeowners' Association/Community
414 Disclosure Summary is incorporated into and made a part of this Contract. IN THE PROPERTY IS LOCATED WITHIN
415 AN ASSOCIATION WHERE MEMBERSHIP IS MANDATORY, A DISCLOSURE SUMMARY IS REQUIRED.
416 BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE
417 DISCLOSURE SUMMARY. IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA
418 STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING



Property Address:   604   N.E. 14 Ave              Fort Lauderdale   #1   33304

419 THIS CONTRACT FOR SALE. THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO
420 SELLER OR SELLER'S AGENT WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL
421 WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING,
422 WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO
423 EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.
424 40. FINAL AGREEMENT: This is the final agreement of the parties and no agreements or representations unless
425 incorporated herein shall be binding on the parties. Typewritten provisions shall supersede printed provisions and
426 handwritten provisions shall supersede typewritten and/or printed provisions. Such handwritten or typewritten
427 provisions as are appropriate may be inserted on this form or attached as an addendum. Whenever used, the singular
428 number shall include the plural, the plural the singular, and the use of any gender shall include all genders.
429 SPECIAL CLAUSES:
430
431
432
433
434
435
436
437
438
439
440
441
442
443
444
445
446
447
448
449
450
451
452
453
454 ADDENDUM(S) ATTACHED: CHECK ALL THAT APPLY
455 (  ) 1031 Exchange (Seller Exchanging)          (  )  Homeowners' Association Addendum
456 (  ) 1031 Exchange (Buyer Exchanging)           (  )  Homeowners' Assoc./Community Disclosure Summary
457 (  ) AS-IS Addendum                             (  )  Interest-Bearing Escrow Agreement
458 (  ) Appraisal Addendum                         (  )  Lead-Based Paint Disclosure
459 (  ) Back-up Contract Amendment                 (  )  Listing Stays on Market with Kick-Out Clause
460 (  ) Coastal Construction Control Line Waiver   (  )  Option To Purchase Addendum
461 (  ) Condominium Addendum                       (  )  Rental or Occupancy Addendum
462 (  ) Contingent on Closing of Buyer's Property Addendum (  )  Seller's Disclosure
463 (  ) FHA/VA Addendum                            (  )  Other: _____
464 (  ) FIRPTA Addendum

Jul.25. 2007  8:25PM                                          No.6287  P. 10

07/21/2007  18:42    9543779837              REMAX PARTNERS              PAGE  22/23

Property Address: 604  N.E. 11 Ave              Fort Lauderdale  #1  33304

465 BUYER _____ Date _____    BUYER _____ Date _____

466 Printed Name _____          Printed Name _____

467 Social Security or Tax I.D. # _____  Social Security or Tax I.D. # _____

468 Address _____

469 Tele. #: _____ Fax #: _____    Tele. #: _____ Fax #: _____

470 E-Mail: _____           E-Mail: _____

471 DEPOSIT RECEIVED _____, 20__  to be held subject to this Contract and to clearance.

472 Deposit received by (print name): _____  (signature): _____

473 for delivery to Escrow Agent within one (1) business day.

474 ACCEPTANCE OF CONTRACT AND PROFESSIONAL SERVICE FEE: Seller hereby accepts this offer and

475 recognizes ____RE/MAX Partners 5____ as Listing Broker, Broker MLS ID # _____

476 Address: _____

477 Tele. # ____954-377-8333___ Fax #: ___954-377-8097___ Sales Associate ___Paul ImKing, P.A.___

478 Sales Assoc. MLS ID#: _____  Sales Assoc. E-Mail: _____

479 and recognizes ___Castelli Real Estate Services___ as Selling Broker, Broker MLS ID # ___687636___

480 Address: 719 N Federal Highway          Fort Lauderdale       FL     33304

481 Tele. # ___954-526-7600___ Fax #: ___954-336-7410___ Sales Associate _____John Castelli___

482 Sales Assoc. MLS ID#: ____687636___  Sales Assoc. E-Mail: ___johncastelli@bellsouth.net___

483 [CHECK and COMPLETE THE ONE APPLICABLE]

484 (X) IF A WRITTEN LISTING AGREEMENT IS CURRENTLY IN EFFECT: Seller agrees to pay Listing Broker named above
485 according to an existing, separate written professional fee agreement as per MLS # _____. If Buyer fails to perform
486 and deposits are retained, 50%, but not exceeding the professional fee, shall be equally divided between the Brokers as full
487 consideration for Brokers' services including costs expended by Brokers, and the balance shall be paid to Seller. OR

488 ( ) IF NO WRITTEN LISTING AGREEMENT IS CURRENTLY IN EFFECT: Seller shall pay Brokers named above, at closing,
489 from the proceeds of sale, a professional fee of ____ % of the Purchase Price and a transaction fee of $_____
490 for Brokers' services in effecting the sale by finding Buyer ready willing and able to purchase pursuant to the Contract. If Buyer
491 fails to perform and deposits are retained, 50%, but not exceeding the professional fee, shall be equally divided between the Brokers
492 as full consideration for Brokers' services including costs expended by Brokers, and the balance shall be paid to Seller.

493                                          7-18-07

494 SELLER _____ Date _____    SELLER _____ Date _____

495 Printed Name: ___Joseph Casalena___      Printed Name _____

496 Social Security or Tax I.D. # _____  Social Security or Tax I.D. # _____

497 Address _____

498 Tele. #: _____ Fax #: _____    Tele. #: _____ Fax #: _____

499 E-Mail: _____

500 THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. If you do not fully understand this Contract, seek the advice
501 of an attorney prior to signing. If you desire legal or tax advice consult an appropriate professional. This Form has been approved
502 by the Broward County Bar Association and the REALTOR® Association of Greater Fort Lauderdale, Inc. Approval does
503 not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular
504 transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of
505 all parties.

Form #1001              Page 10 of 10              Revised 6/30/2006

## Addendum to Contract

**Buyer:**     A & J Realty Trust or assigns (to an entity it controls )

**Seller:**     JLC LLC (Joe Casalana)

**Property:**   604 N.E. 14 Ave Ft Lauderdale Fl 33304  Victoria Landing # 1

The following clauses shall amend the Deposit Receipt and Contract for Sale and purchase to which this is attached. In the event of inconsistencies between the Addendum and the Contract, the provisions contained in this Addendum shall prevail.

Buyer and Seller hereby agree to:

1. Developer's contract will stay in full force and will not be considered null and void until Unit 1 is closed and funded by new buyer, A & J. Realty Trust or assigns to an entity it controls.
2. A & J Realty Trust is purchasing unit 1 for $ 740,000 dollars and will be responsible for their own closing cost.
3. Seller Joe Casalana will be responsible for developer's fees and closing cost in original developer's contract except the 1.75 % because the buyer A & J Realty Trust will be paying for their own title work and choosing their own title company.
4. All original escrow deposits will stay with Developer and his escrow agent until closing, but will be refunded to JLC Developers LLC ( Joe Casalana) at the time and place of closing.
5. Joe Casalana will pay 5 % of purchase price (  $ 740,000 ) to Castelli Real Estate Services.
6. Closing shall take 15 days after certificate of occupancy is issued by authorized governmental agency.

Buyer: _____   Date: _____

Buyer: _____   Date: _____

Seller: _____   Date: 7-18-07

Seller: _____   Date: _____

Jul.25. 2007 8:10PM     #E     No.6286    P. 3

07/21/2007 10:42    9543775837     ROMAX PARTNERS     PAGE 02/23



### REALTOR® ASSOCIATION OF GREATER FORT LAUDERDALE

## DEPOSIT RECEIPT AND CONTRACT FOR SALE AND PURCHASE
#### (IF FHA, VA or CONDOMINIUM/HOMEOWNER'S ASSOCIATION CONTRACT, ADDENDUM REQUIRED)

3 BUYER _____ A & J Realty Trust or assigns ( to an entity it controls ) _____

4 SELLER _____ JIC Developers LLC (Joe Cusimano) _____

5 Buyer and Seller agree Seller shall sell and Buyer shall buy the following real property ("Real Property") and personal
6 property ("Personalty") (collectively "Property") upon the terms and conditions and any addendum to this Contract.
7 1. LEGAL DESCRIPTION of Real Property located in _____ Broward _____ County, FL.

8 Property known as Victoria Landing Unit # 3

9 _____ TAX FOLIO #: _____

10 1.1 PROPERTY ADDRESS: 884 _ SE 24, Ave _____ Fort Lauderdale _____ 33316
11                                   (Address)                  (City)               (Zip)
12 1.2 Seller represents the Property can be used for the following purposes: _____ residential _____

13 2. PURCHASE PRICE: (In U.S. funds) ..................................................$ 740,000.00
14 _____ Seven Hundred Forty Thousand

15 2.1 Deposit made at the time Buyer executed this document ..........................$ 90,000.00
16 2.2 Additional deposit due within _____ United States business days after Effective Date.
17     Time is of the essence as to ALL deposits .............................$ _____
18     All Deposits to be held by: _____ S Barnett & Associates _____ ("Escrow Agent")
19 2.3 Amount of new note and mortgage to be executed by Buyer to any lender other than Seller . $ 625,000.00
20     Type of mortgage:
21     (CHECK ONE) ( ) Conventional, ( ) FHA., ( ) VA (IF FHA or VA see Addendum)
22     (CHECK ONE) ( ) Prevailing Rate & Terms; OR ( ) Interest Rate _____ % & Term _____ Years
23     (CHECK ONE) ( ) Fixed Rate, ( ) Variable rate with a maximum ceiling of _____ %
24     Other terms: _____
25 2.4 Existing mortgage balance encumbering the Real Property
26     to be ASSUMED by Buyer approximately ..................................$ _____
27     Mortgagee Name _____ Loan #: _____
28     (CHECK ONE) ( ) Fixed rate not to exceed the rate of _____ %
29                 ( ) Variable current rate with a maximum ceiling of _____ %
30     Balloon Mortgage: ( ) Yes ( ) No    Balloon Due Date: _____
31     Other terms: _____
32 2.5 Purchase money note to Seller secured by a ( ) 1st OR ( ) 2nd purchase money mortgage,
33     bearing interest at the rate of _____ % per annum with payments based on _____ years
34     amortization OR payable $ _____ principal and interest per _____ .........$ _____
35     Balloon Mortgage: ( ) Yes ( ) No    Balloon Due Date: _____
36     Due on sale: ( ) Yes ( ) No    No prepayment penalty.
37 2.6 Other consideration: _____ ..........................$ _____
38 2.7 Approximate payment due at closing as described in paragraph 27.1
39     (This does not include closing costs and prepaid items) ..........................$ 61,000.00
40 2.8 PURCHASE PRICE ..................................................$ 740,000.00

41 3. CLOSING DATE: This Contract shall be closed and the deed and possession shall be delivered on or before
42     TBA _____ , 2007 _____ ("Closing Date") unless extended by other provisions of this Contract or
43 separate agreement.
44 4. TIME FOR ACCEPTANCE: If, by 5:00 p.m. _____ 20 _____ , this offer is not
45 executed by all parties and a copy delivered to all parties or their Authorized Representative, this offer is withdrawn and
46 all deposits will be returned to Buyer.

This contract is intended to comply with Florida laws. Consult legal advisor... www.xxxxxx.com

Form #1001                  Page 1 of 10                Revised 6/17/2006

Jan.25. 2007  8:10PM  #E.  No.5286  P. 3
07/21/2007 10:42  9543175837  RONAX PARTNERS  PAGE 02/23

REALTORS ASSOCIATION OF GREATER FORT LAUDERDALE  

# DEPOSIT RECEIPT AND CONTRACT FOR SALE AND PURCHASE
(IF FHA, VA or CONDOMINIUM/HOMEOWNER'S ASSOCIATION CONTRACT, ADDENDUM REQUIRED)

3 BUYER _____ A & J Realty Trust or assigns ( to an entity it controls ) _____
4 SELLER _____ JIC Developers LLC (see Caroline ) _____
5 Buyer and Seller agree Seller shall sell and Buyer shall buy the following real property ("Real Property") and personal
6 property ("Personalty") (collectively "Property") upon the terms and conditions and any addendum to this Contract
7 1. LEGAL DESCRIPTION of Real Property located in _____ Broward _____ County, FL.
8 Property known as Victoria Landing Unit # 5
9 _____ TAX FOLIO #: _____
10 1.1 PROPERTY ADDRESS: 604  NE 24 Ave _____ Fort Lauderdale  33304
11 _____ (Address) _____ (City) _____ (Zip)
12 1.2 Seller represents the Property can be used for the following purposes: _____ residential

13 2.  PURCHASE PRICE: (In U.S. funds) ................................................ $  740,000.00
14 _____ Seven Hundred Forty Thousand _____
15 2.1 Deposit made at the time Buyer executed this document ........................ $  50,000.00
16 2.2 Additional deposit due within _____ United States business days after Effective Date.
17 Time is of the essence as to ALL deposits .......................................... $
18 All Deposits to be held by: _____ S Barnett & Associates _____ ("Escrow Agent")
19 2.3 Amount of new note and mortgage to be executed by Buyer to any lender other than Seller . . $  521,000.00
20 Type of mortgage:
21 (CHECK ONE) ( ) Conventional, ( ) FHA, ( ) VA (If FHA or VA see Addendum)
22 (CHECK ONE) ( ) Prevailing Rate & Terms; OR, ( ) Interest Rate _____ % & Term _____ Years
23 (CHECK ONE) ( ) Fixed Rate, ( ) Variable rate with a maximum ceiling of _____ %
24 Other terms: _____
25 2.4 Existing mortgage balance encumbering the Real Property
26 to be ASSUMED by Buyer approximately: ........................................... $
27 Mortgagee Name _____ Loan # _____
28 (CHECK ONE) ( ) Fixed rate not to exceed the rate of _____ %
29 ( ) Variable current rate with a maximum ceiling of _____ %
30 Balloon Mortgage: ( ) Yes ( ) No  Balloon Due Date: _____
31 Other terms: _____
32 2.5 Purchase money note to Seller secured by a ( ) 1st OR ( ) 2nd purchase money mortgage,
33 bearing interest at the rate of _____ % per annum with payment based on _____ years
34 amortization OR payable $ _____ principal and interest per _____ .......... $
35 Balloon Mortgage: ( ) Yes ( ) No  Balloon Due Date: _____
36 Due on sale: ( ) Yes ( ) No  No prepayment penalty.
37 2.6 Other consideration: ............................................................ $
38 2.7 Approximate payment due at closing as described in paragraph 27.1
39 (This does not include closing costs and prepaid items) ........................... $  51,000.00
40 2.8 PURCHASE PRICE ............................................................... $  710,000.00

41 3.  CLOSING DATE: This Contract shall be closed and the deed and possession shall be delivered on or before
42 _____ TBA _____ , 200_  ("Closing Date") unless extended by other provisions of this Contract or
43 separate agreement.
44 4.  TIME FOR ACCEPTANCE: If, by 5:00 p.m. _____ , 20 _____ , this offer is not
45 executed by all parties and a copy delivered to all parties or their Authorized Representative, this offer is withdrawn and
46 all deposits will be returned to Buyer.

Property Address:  684   SW 14. Ave                    Fort Lauderdale                   33704

47 **5.  PERSONALTY INCLUDED:** All fixed items including all landscaping; window screens, window treatments and
48  hardware; wall-to-wall or attached floor coverings and attached lighting fixtures as now installed on the Real Property.
49  Also included are the following checked items:  (  ) range,  (X) oven,  (X) refrigerator,  (X) dishwasher,  (X)
50  disposal,  (X) microwave oven,  (  ) trash compactor, (X) washer, (X) dryer,  (  ) ceiling fans (_____ # of fans),
51  (  ) solar equipment, (  ) satellite dishes, (  ) security/alarm systems, (X) pool cleaning equipment (DESCRIBE):
52
53 **5.1  ADDITIONAL PERSONALTY INCLUDED:** _____
54
55
56 **5.2  PERSONALTY NOT INCLUDED:** _____
57 **5.3  LEASED ITEMS:** (  ) security/alarm systems, (  ) propane tanks, (  ) solar equipment, (  ) satellite dishes,
58  Other: _____
59 **6.  FACSIMILE/COUNTERPARTS:** A legible facsimile copy of this entire Contract and any signatures shall be
60  considered as originals. This Contract may be signed in counterparts and taken together shall be considered an original.
61 **7.  EFFECTIVE DATE:** The Effective Date of this Contract ("Effective Date") shall be the day upon which it becomes
62  fully executed by all parties and a copy delivered to all parties or their Authorized Representative.
63 **8.  TIME AND BUSINESS DAYS DEFINED:** All time periods will be computed in business days unless otherwise
64  indicated. A "business day" is every calendar day except Saturday, Sunday and national legal holidays. If any time
65  period ends on a Saturday, Sunday or national legal holiday, performance will be due the next business day. All time
66  periods will end at 5:00 p.m. local time in the county where the Real Property is located.
67 **9.  DELIVERY TO AUTHORIZED REPRESENTATIVE:** Delivery of any document required or permitted by this
68  Contract to be delivered to Buyer or Seller shall be deemed to be delivered when delivery has been made to such party's
69  Authorized Representative ("Authorized Representative").
70 **9.1  DEFINITION OF AUTHORIZED REPRESENTATIVE:** Authorized Representative shall include:
71  9.1.1 any licensed Florida attorney representing Buyer or Seller in this transaction (so to the party the attorney represents);
72  9.1.2 any person specifically authorized in writing by Buyer or Seller to receive documents;
73  9.1.3 as to Seller, the Florida real estate licensee(s) shown as listing sales associate(s) and the active broker(s) ("Broker")
74  of licensee's real estate firm;
75  9.1.4 as to Buyer, the Florida real estate licensee(s) presenting this document to Seller or Seller's Authorized
76  Representative and the active broker(s) ("Broker") of licensee's real estate firm.
77 **10.  EVIDENCE OF TITLE:** Seller shall, at Seller's expense, furnish to Buyer or Buyer's closing agent not less than
78  fifteen (15) business days prior to the Closing Date either: 1) a certified abstract of title which shall commence with the
79  earliest public records with certified search through the Effective Date; or 2) a prior owner's title insurance policy issued
80  by a currently licensed title insurance company and partial certified abstract or certified search from the date of such
81  policy through the Effective Date. Seller shall convey a marketable title, subject only to liens, encumbrances, exceptions
82  or qualifications set forth in this Contract and those which shall be discharged by Seller at or before closing. Marketable
83  title shall be determined according to applicable Title Standards adopted by The Florida Bar and in accordance with the law.
84  **10.1  PALM BEACH COUNTY:** If the Real Property is located in Palm Beach County, Seller shall, at Seller's expense,
85  deliver to Buyer, a title insurance commitment and policy issued by a Florida licensed title insurer acceptable to major
86  institutional lenders located in Palm Beach County agreeing to issue to Buyer, upon recording of the deed, an owner's
87  policy of title insurance in the amount of the Purchase Price, insuring marketable title in Buyer to the Real Property
88  subject only to liens, encumbrances, exceptions or qualifications set forth in this Contract and those which shall be
89  discharged by Seller at or before closing.
90  **10.2  RESERVATIONS:** A right of entry in connection with oil, mineral or gas reservations shall constitute a title defect
91  unless such right of entry is prohibited by government regulations.
92  **10.3  TITLE DEFECTS:** Buyer shall have ten (10) business days from the date of receiving evidence of title to examine
93  same. If title is found to be defective, Buyer shall within said period, notify Seller in writing specifying the defects. If
94  such defects render the title unmarketable, Seller shall have thirty (30) business days from the receipt of such notice to
95  cure the defects, and if after said period Seller shall not have cured the defects, Buyer shall have the option of: 1)
96  accepting title as it then is; or 2) terminating this Contract by delivery of written notice to Seller or his Authorized
97  Representative, and deposits shall be returned to Buyer and all parties shall be released from all further obligations
98  herein.
99  **11.  SURVEY:** Buyer, at Buyer's expense, within the time allowed to deliver evidence of title and to examine same, may
100  have the Real Property surveyed and certified by a registered Florida surveyor. If the survey shows encroachment on the

Jul.25. 2007  8:11PM                                    No.6286   P. 5

07/21/2007  10:42    9543775837         RIMAX PARTNERS              PAGE  04/23

Property Address: ___ 694  SE 24. Ave _____ ____Fort Lauderdale  FL_____ 33304 ___

101 Real Property or that improvements located on the Real Property encroach on setback lines, easements, lands of others,
102 or violate any restrictions, contract covenants or applicable governmental regulation, the same shall constitute a title
103 defect. If the Real Property is located east of the Intracoastal Waterway the Coastal Construction Control Line as defined
104 in F.S. 161.053 may affect it.
105 12. CONVEYANCE: Seller shall convey title to the Real Property by statutory warranty or fiduciary special warranty
106 deed, if applicable, subject only to land use designation, zoning restrictions, prohibitions and other requirements
107 imposed by governmental authority; restrictions, easements and matters appearing on the plat or otherwise common to
108 the subdivision; public utility easements of record which are located contiguous to the Real Property Lines and not more
109 than twelve (12) feet in width as to the rear or front lines and seven and one-half (7.5) feet in width as to the side lines
110 (unless otherwise specified herein); taxes for year of closing and subsequent years; assumed mortgages and purchase
111 money mortgages (provided there exists at closing no violation of the foregoing and none of them prevents the use of the
112 Real Property for the purpose represented in this Contract); matters contained in this Contract and matters otherwise
113 accepted by Buyer. Personalty shall, at request of Buyer, be transferred by an absolute bill of sale with warranty of title,
114 subject only to such matters as are otherwise provided herein.
115 13. EXISTING MORTGAGES: If Buyer is assuming an existing mortgage, Seller shall obtain and furnish a statement
116 from the mortgagee setting forth the principal balance, method of payment, interest rate and whether the mortgage is in
117 good standing. If there are charges for the change of ownership, including charges for assumption, they shall be paid by
118 Buyer unless the total charges exceed one percent (1%) of the unpaid balance of the mortgage to be assumed. If the total
119 cost of the above items exceed one percent (1%) of the unpaid balance of the mortgage to be assumed, then either party
120 shall have the option of paying any amount in excess so the entire cost is paid, and this Contract shall remain in full
121 force and effect. However, if neither party agrees to pay the additional amount, then either party may terminate this
122 Contract by delivery of written notice to the other party or his Authorized Representative, and deposits shall be returned
123 to Buyer and all parties shall be released from all further obligations herein.
124 13.1 APPLICATION AND QUALIFICATION: Buyer shall make application for assumption of the existing mortgage
125 within _____ business days (five (5) business days if this blank is not filled in) after the Effective Date. Buyer agrees
126 to make a good faith, diligent effort to assume the existing mortgage and agrees to execute all documents required by the
127 mortgagee for the assumption. If the mortgagee does not give written consent to permit the Buyer to assume the existing
128 mortgage at the rate and terms of payment specified herein within _____ business days (twenty (20) business days if
129 this blank is not filled in) after the Effective Date, either party may terminate this Contract by delivery of written notice
130 to the other party or his Authorized Representative, and deposits shall be returned to Buyer and all parties shall be
131 released from all further obligations herein. This right of termination shall cease upon Buyer obtaining written approval
132 for assumption of the mortgage prior to delivery of the notice of termination.
133 13.2 VARIANCE: Any variance in the amount of a mortgage to be assumed and the amount stated in this Contract shall
134 be added to or deducted from the cash payment. If the mortgage balance is more than three percent (3%) less than the
135 amount indicated in this Contract, Seller shall have the option of adjusting the Purchase Price to an amount where the
136 differential is no more than three percent (3%), and if Seller declines to do so, then either party may terminate this
137 Contract by delivery of written notice to the other party or his Authorized Representative, and deposits shall be returned
138 to Buyer and all parties shall be released from all further obligations herein. This notice must be given not less than five
139 (5) business days prior to closing.
140 13.3 DISPOSITION OF ESCROW BALANCE: If Buyer assumes a mortgage, Seller shall receive as credit at closing an
141 amount equal to the escrow funds held by the mortgagee, which funds shall thereupon be transferred to Buyer.
142 14. NEW MORTGAGES: If Buyer executes a mortgage, all related costs and charges shall be paid by Buyer. Except as
143 provided below, any purchase money note and mortgage to Seller shall follow a form with terms generally accepted and
144 used by institutional lenders doing business in the county where the Real Property is located. A purchase money
145 mortgage shall provide for an annual proof of payment of taxes and insurance against loss by fire with extended
146 coverage in an amount not less than the full insurable value of the improvements. A first mortgage and note shall
147 provide for acceleration at the option of the holder after thirty (30) calendar days default; for junior mortgages this shall
148 be ten (10) calendar days. The note shall provide for a late charge of five percent (5%) of the payment due if payment is
149 received by the mortgagee more than ten (10) calendar days after the due date and mortgagee has not elected to
150 accelerate. Junior mortgages shall require the owner of the Real Property encumbered to keep all prior liens and
151 encumbrances in good standing and shall forbid the owner from accepting modifications or future advances under any
152 prior mortgages. Any prepayment shall apply against principal amounts last maturing.

Property Address:  504   NE 14. Ave                   Fort Lauderdale       33304

153 14.1 PREQUALIFICATION: Within _____ business days (five (5) business days if this blank is not filled in) after
154 the Effective Date, Buyer shall provide to Seller a letter from a lender stating that, based on a review of Buyer's
155 application and credit report, Buyer is prequalified for the mortgage loan indicated in Paragraph 2.3. If Buyer fails to
156 provide such letter within that time, Seller may terminate this Contract by delivery of written notice to Buyer or his
157 Authorized Representative and deposits shall be returned to Buyer and all parties shall be released from all further
158 obligations herein. This right of termination shall cease upon Buyer obtaining a loan commitment prior to delivery of the
159 notice.

160 14.2 APPLICATION AND QUALIFICATION: If this Contract provides for Buyer to obtain new mortgage financing,
161 then Buyer's performance under this Contract shall be contingent upon Buyer obtaining said mortgage financing upon
162 the terms stated, or if none are stated, then upon the terms generally prevailing at such time in the county where the Real
163 Property is located. Buyer agrees to apply within _____ business days (five (5) business days if this blank is not
164 filled in) after the Effective Date and to make a good faith, diligent effort to obtain mortgage financing. The commission
165 or omission of any act by Buyer calculated to produce a rejection by any mortgage lender shall be a default by Buyer.

166 14.3 RELEASE OF INFORMATION: Buyer authorizes their mortgage broker and/or lender to provide information to
167 Buyer, Seller and their Authorized Representatives in accordance with Section VII of the Gramm-Leach-Bliley Act. The
168 information to be provided is limited to information necessary to verify that Buyer is complying with this Contract and
169 that there has been no material change in any information provided.

170 14.4 FAILURE TO OBTAIN LOAN COMMITMENT: If within __30__ business days (thirty (30) business days if
171 this blank is not filled in) after the Effective Date, or by the Closing Date, whichever occurs sooner, Buyer fails to obtain
172 a loan commitment, or after diligent effort Buyer is not able to comply with the terms and conditions of the loan
173 commitment, and Buyer does not waive Buyer's rights under this subparagraph within the time stated for obtaining the
174 commitment, then either party may terminate this Contract by delivery of written notice to the other party or his
175 Authorized Representative, and deposits shall be returned to Buyer and all parties shall be released from all further
176 obligations herein. This right of termination for failure to obtain a loan commitment shall cease upon Buyer obtaining a
177 loan commitment prior to delivery of the notice of termination.

178 15. INSPECTIONS, REPAIR AND MAINTENANCE: Buyer shall have the right, at Buyer's expense, to have roof,
179 seawall, dock, pool, electrical, plumbing, sprinkler system, window, septic system, radon, mold, hazardous substance,
180 environmental, wood destroying organism, air conditioning and heating system, appliances, mechanical, structural and
181 other inspections made by a person who specializes in and holds an occupational license (if required by law) to conduct
182 such inspections or who holds a Florida license to repair and maintain the items inspected ("Professional Inspector"). All
183 written reports of Buyer's inspections, together with the estimated cost of repairs and treatments, shall be delivered to
184 Seller or Seller's Authorized Representative within _____ business days (fifteen (15) business days if this blank is not
185 filled in) after the Effective Date except any wood destroying organism inspection report shall be delivered not later than
186 fifteen (15) business days prior to the Closing Date. If such reports and estimates are not delivered within the stated
187 time, Buyer is deemed to have accepted the Property "As Is."

188 15.1 DISPUTES: If Seller disagrees with Buyer's inspection reports, Seller shall have the right to have inspections of
189 the disputed items made at Seller's expense by Professional Inspectors. All written reports of Seller's inspections
190 together with the estimated cost of repairs and treatments shall be delivered to Buyer or Buyer's Authorized
191 Representative within five (5) business days from the date Seller receives Buyer's report. If Buyer's and Seller's
192 inspection reports do not agree, Buyer and Seller shall agree on a third Professional Inspector, whose report shall be
193 binding. The cost of the third Professional Inspector shall be paid equally by Buyer and Seller. Any third such binding
194 inspector shall be agreed upon, and said inspection ordered, within five (5) business days from date of delivery of
195 Seller's inspection report(s) to Buyer.

196 15.2 DEFECTS: If inspections reveal functional defects, code violations, open building permits, the existence of radon,
197 mold, hazardous substances, environmental pollution, or wood destroying organism and damage, the cost of
198 correction, treatment and repair shall be at the expense of Seller and shall be performed in a workmanlike manner.

199 15.2.1 WOOD DESTROYING ORGANISMS: Wood destroying organisms means arthropod or plant life which
200 damages and can in-infest seasoned wood in a structure, namely: termites, powder-post beetles, oldhouse borers, wood-
201 decaying fungi.

202 15.2.1.1 TREATMENT: Seller shall have the Property treated and any termites removed at least two (2) business days
203 before the Closing Date by a licensed pest control company if required to obtain a clear wood destroying organism
204 report.

205 15.2.1.2 WOOD DAMAGE: Seller shall repair at least two (2) business days before the Closing Date all wood damage
206 required to obtain a clean wood destroying organism report.

Jul. 25. 2007  8:12PM                                    No.6286   P. 7

07/21/2007  18:42    9343773827         REMAX PARTNERS           PAGE  86/73

Property Address:    804   NE 14. Ave                    FORT Lauderdale   ___   33304

207 15.2.2 EXCLUSIONS:
308 15.2.2.1 AGE AND AESTHETIC DEFECTS: Age alone is not a functional defect nor are aesthetic defects which
209 include: cracked or broken roof tiles; pitted marcite; missing or torn window screens or screen doors (excluding pool or
210 patio screen enclosures); fogged windows; tears, worn spots and discoloration of floor coverings, wallpapers, window
211 treatments; nail holes; scratches, dents, scrapes, chips and caulking in ceilings, walls, flooring, tile, fixtures, mirrors; and
212 minor cracks in floor tiles, windows, driveways, sidewalks, pool decks, garage and patio floors.
213 15.2.2.2 CODE: Seller is not obligated to bring any item into compliance with existing building code regulations if such
214 item complied with the building code or was granted a certificate of occupancy at the time it was constructed.
215 15.2.2.3 FENCES AND UTILITY BUILDINGS: Wood destroying organism infestation or damage in fences or utility
216 structures more than three (3) feet from any residential structure is not a defect.
217 15.2.2.4 EXISTING WOOD DESTROYING ORGANISMS WARRANTY: Seller is not obligated to treat the Property
218 if all of the following apply:  1) there is no visible live infestation and 2) the Property has been previously treated and 3)
219 assignment of existing from Seller to Buyer of a current full-treatment warranty that has at least twelve (12) months to
220 run is accepted by the warrantor and 4) Buyer's lender (if any) is willing to close with the above.
221 15.3 LIMITATION: If the cost of repairs and treatments exceed:
222 (one percent (1%) of the Purchase Price if this blank is not filled in), Buyer or Seller may elect to pay the excess, failing
223 which, either party may terminate this Contract by delivery of written notice to the other party or his Authorized
224 Representative and deposits shall be returned to Buyer and all parties shall be released from all further obligations
225 herein.
226 15.4 COMPLETION DATE AND ESCROW FOR REPAIRS: Seller shall complete all corrections, treatments and
227 repairs at least two (2) business days before the Closing Date and, if not, sufficient funds shall be escrowed at closing to
228 effect such corrections, treatments and repairs, unless prohibited by Buyer's lender. Funds equal to 150% of the
229 maximum estimate for corrections, treatments and repairs as set forth in the inspection reports shall be deemed sufficient
230 funds.
231 15.5 WALK THROUGH INSPECTION: Buyer is entitled to a walk through inspection immediately prior to closing to
232 verify compliance with this section and to verify that no functional defects have occurred subsequent to the inspections.
233 All appliances and machinery included in this sale shall be in working order at closing.
234 15.6 UTILITIES: Seller shall provide utility service for all inspections including walk-thru inspections and until
235 closing is completed. All parties and their Authorized Representatives shall be given reasonable prior notice of all
236 inspections and shall have the right to be present at all inspections.
237 15.7 MAINTENANCE: Between the Effective Date and the closing, Seller shall maintain the Property, including but not
238 limited to the lawn, shrubbery and pool in the same condition as it was on the Effective Date, ordinary wear and tear
239 excepted. Seller shall vacate the Property and remove all furniture and personal items not included in this sale and leave
240 the Property in a clean, broom-swept condition before the time set for closing.
241 16. ENVIRONMENTAL CONDITION: Seller represents that Seller is not aware of any prior or existing environmental
242 condition, alteration or incident on, at, or concerning the Property or any adjacent property that may give rise as against
243 Seller or the Property to an action or to liability under any law, rule, ordinance or common law theory.
244 17. INSURANCE: If insurance cannot be obtained because of tropical storm activity, either party may delay closing
245 until tropical storm activity no longer prevents acquisition of insurance.
246 18. SERVICE CONTRACTS:   Buyer may accept or reject continuation of service contracts, provided they are
247 assignable to Buyer.  If accepted, the cost shall be prorated. Buyer shall pay any transfer fee.
248 19. INGRESS AND EGRESS: Seller warrants there is ingress and egress to the Real Property over public or private
249 roads or easements.
250 20. LEASES: Unless indicated under Special Clauses, at closing there shall be no lease or right of occupancy
251 encumbering the Real Property  If this Contract is subject to leases or rights of occupancy which will continue after
252 closing, Seller shall, ten (10) business days prior to the Closing Date, furnish to Buyer copies of all written leases or
253 written rights of occupancy and estoppel letters from each tenant specifying the nature and duration of said tenant's
254 occupancy, rental rate, prepaid rents or security deposits paid by tenant. If Seller is unable to obtain estoppel letters from
255 tenants, the same information may be furnished by Seller to Buyer in the form of a Seller's affidavit.  Advance rents
256 shall be prorated and deposits credited to Buyer at closing.
257 21. SELLER'S AFFIDAVIT:   Seller shall furnish to Buyer at closing an affidavit attesting to the absence of any
258 financing statements, claims of lien or potential lienors known to Seller. If the Real Property has been improved within
259 ninety (90) calendar days prior to closing, Seller shall deliver to Buyer an affidavit setting forth names and addresses of
260 all contractors, subcontractors, suppliers and material men and stating that all bills for work on the Real Property have

Case 0:10-cv-60389-JIC   Document 1-2   Entered on FLSD Docket 03/16/2010   Page 57 of 77

Property Address:    606   NE 24. Ave                    Fort Lauderdale              33304

261 been paid, Buyer may require releases of all such potential liens. The affidavit shall state that there are no unrecorded
262 pending against Seller that could give rise to a lien that would attach to the Property between the disbursing of the
263 closing funds and the recording of the instrument of conveyance and that Seller has not, and will not, execute any
264 instrument that could adversely affect title to the Property.
265 22. DOCUMENTS FOR CLOSING: If applicable, Seller shall cause to be prepared and provided a deed, purchase
266 money mortgage and note, assignment of leases, bill of sale, Seller's affidavit, FIRPTA affidavit, survey or affidavit
267 regarding coastal construction control line, F.S. 161.57, and any corrective instruments that may be required in
268 connection with perfecting the title. Buyer's closing agent shall prepare the closing statement.
269 23. EXPENSES: Abstracting prior to closing, governmental lien searches, cost of obtaining payoff and estoppel letters,
270 State documentary stamps on the deed and the cost of recording any corrective instruments shall be paid by Seller.
271 Intangible personal property taxes and documentary stamps to be affixed to the purchase money mortgage or required on
272 any mortgage modification, the cost of recording the deed and purchase money mortgage and documentary stamps and
273 recording costs incurred in connection with assumption of any existing mortgage shall be paid by Buyer.
274 24. PRORATION: Taxes, insurance, assumed interest, utilities, rents and other expenses and revenue of the Property
275 shall be prorated through the day prior to closing. Taxes shall be prorated on the current year's tax, if available. If the
276 closing occurs when the current year's taxes are not available, and the current year's assessment is available, taxes will
277 be prorated based upon such assessment and the prior year's millage. If the current year's assessment is not available,
278 then taxes will be prorated on the prior year's tax; provided, if there are completed improvements on the Property by
279 January 1st of the year of closing and these improvements were not in existence on January 1st of the prior year, then the
280 taxes shall be prorated through the day prior to closing based upon the prior year's millage and at an equitable
281 assessment to be agreed upon between the parties, failing which, requests will be made to the county tax assessor for an
282 informal assessment taking into consideration the foregoing. Any tax proration based on an estimate may, at the
283 request of either party, be subsequently readjusted upon receipt of the tax bill. All such prorations whether based on
284 actual tax or estimated tax will make appropriate allowance for the maximum allowable discount and the homestead or
285 other exemptions if allowed for the current year. The provisions in this paragraph shall survive the closing.
286 25. SPECIAL ASSESSMENT LIENS: Certified, confirmed and ratified governmental special assessment liens as of the
287 Effective Date are to be paid by Seller. Pending liens as of the Effective Date shall be assumed by Buyer. The provisions
288 in this paragraph shall survive the closing.
289 26. PLACE OF CLOSING: Closing shall be held at the office of the Buyer's closing agent if located within the county
290 where the Real Property is located, and if not, then at the office of Seller's closing agent if located within the county
291 where the Real Property is located, and if not, then at such place as mutually agreed upon. If a portion of the Purchase
292 Price is to be derived from institutional financing, the requirements of the lender as to place, time and procedures for
293 closing shall control, notwithstanding anything in this Contract to the contrary.
294 27. PROCEEDS OF SALE AND CLOSING PROCEDURE: The deed shall be recorded and evidence of the title
295 continued at Buyer's expense to show title in Buyer without any encumbrances or changes which would render Seller's
296 title unmarketable from the date of the last evidence, and the cash proceeds of sale may be held in escrow by Seller's
297 attorney or by such other escrow agent as may be mutually agreed upon for a period of not longer than ten (10) business
298 days. If Seller's title is rendered unmarketable, Buyer's closing agent shall, within said ten (10) day period, notify Seller
299 in writing of the defect, and Seller shall have thirty (30) business days from receipt of such notice to cure the defect and
300 shall use best efforts to do so. If Seller fails to timely cure the defect, all monies paid by Buyer shall, upon written
301 demand and within five (5) business days thereafter, be returned to Buyer, and simultaneously with such repayment
302 Buyer shall vacate the Property and reconvey the Property to Seller by special warranty deed. If Buyer fails to make
303 timely demand for refund, he shall take title "As Is" waiving all rights against Seller as to such intervening defect except
304 such rights as may be available to Buyer by virtue of warranties contained in the deed. Notwithstanding the above, if title
305 insurance is available, at standard rates insuring Buyer as to any title defects arising between the effective date of the title
306 commitment and the recording of Buyer's deed, the proceeds of sale shall be disbursed to Seller at closing. The
307 provisions of this paragraph shall survive the closing.
308 27.1 All payments including loan proceeds shall be made in U.S. funds in the form of a wire transfer, certified check,
309 cashiers check, bank check, official check, treasurer's check, money order or equivalent instrument issued by a bank,
310 savings and loan association, or credit union with at least one branch in the county where the Real Property is located.
311 27.2 Possession and occupancy will be delivered to Buyer at closing and funding. The provisions of this paragraph shall
312 survive the closing.

This contract is licensed to Jason Johnson - contelli Real Estate Services ver.transactiondesk.com.

Form 51001                          Page 6 of 10                    Revised 6/30/2006

Jul.25. 2007  8:13PM                                    No.6286   P. 9

07/21/2007  18:42   9543775837          REMAX PARTNERS          PAGE  09/23

Property Address:   604   NE 24. Ave                Fort Lauderdale #2         33304

313  27.3 The Broker's professional service fees shall be disbursed simultaneously with Seller's closing proceeds.
314  28. ESCROW DEPOSITS: The provisions of this Section 28 shall survive the termination or closing of this Contract.
315  28.1 The Escrow Agent agrees to promptly deposit, retain, and disburse all deposits in accordance with the terms of this
316  Contract or as may be directed in writing by Seller and Buyer or as may be directed by a court of competent jurisdiction.
317  28.2 If the Escrow Agent is in doubt as to his duties, Escrow Agent shall retain the deposits until Seller and Buyer
318  collectively agree in writing to the disposition thereof or until a court of competent jurisdiction has adjudicated the rights
319  of Seller and Buyer.
320  28.3 If the Escrow Agent is a licensed real estate broker, Escrow Agent shall comply with the provisions of Chapter 475,
321  Florida Statutes, as may be amended from time to time and with any regulations promulgated by the Department of
322  Business and Professional Regulation pertaining to the duties and responsibilities of licensed real estate brokers.
323  28.4 Any suit between Buyer and Seller where Escrow Agent is made a party because of acting as Escrow Agent, or
324  where Escrow Agent interpleads the deposits, Escrow Agent shall recover reasonable attorney's fees and costs from the
325  deposits; such fees and costs shall be charged and assessed against the non-prevailing Buyer or Seller.
326  28.5 The parties agree that Escrow Agent shall not be liable to any party or person for misdelivery to Buyer or Seller of
327  the deposits, unless such misdelivery is due to willful breach of Contract or gross negligence of Escrow Agent.
328  29. RISK OF LOSS: If the improvements are damaged by fire or other casualty before delivery of the deed and can be
329  restored to substantially the same condition as existing on the Effective Date within a period of sixty (60) business days,
330  Seller may restore the improvements and the Closing Date and date of delivery of possession shall be extended
331  accordingly. If Seller fails to do so, Buyer shall have the option of: 1) taking the Property "As Is" together with
332  insurance proceeds, if any, or 2) terminating this Contract by delivery of written notice to Seller or his Authorized
333  Representative and deposits shall be returned to Buyer and all parties shall be released from all further obligations
334  herein.
335  30. ASSIGNMENT: This Contract is not assignable without the specific written consent of Seller if new mortgage
336  financing or an assumption of an existing mortgage is a contingency.
337  31. ATTORNEY FEES AND COSTS: In connection with any arbitration or litigation arising out of this Contract, the
338  prevailing party, whether Buyer, Seller or Broker shall be entitled to recover all costs incurred including attorney's fees
339  and legal assistant fees for services rendered in connection therewith, including appellate proceedings and
340  postjudgement proceedings. The provisions in this paragraph shall survive the termination or closing of this Contract.
341  32. DEFAULT: If either party defaults, the rights of the non-defaulting party and the Broker(s) shall be as provided
342  herein and such rights shall be deemed to be the sole and exclusive rights in such event. The provisions of this Section
343  32 shall survive the termination of this Contract.
344  32.1 BUYER DEFAULT: If Buyer fails to perform any of the covenants of this Contract, all money paid or to be paid
345  as deposits by Buyer pursuant to this Contract shall be retained by or for the account of Seller as consideration for the
346  execution of this Contract and as liquidated damages and in full settlement of any claims for damages and specific
347  performance by Seller against Buyer.
348  32.2 SELLER DEFAULT: If Seller fails to perform any of the covenants of this Contract, all money paid or deposited
349  by Buyer pursuant to this Contract shall be returned to Buyer upon demand, or Buyer shall have the right of specific
350  performance. In addition, Seller shall immediately pay to Brokers the full professional service fee provided for in this
351  Contract or separate listing contract.
352  32.3 MEDIATION: Any controversy or claim between Buyer and Seller arising out of or relating to this Contract or a
353  breach thereof may be submitted to mediation prior to arbitration or litigation. The mediator's fees shall be paid equally
354  by the parties of the mediation. Any of the above proceedings shall be brought in the county where the Real Property is
355  located and shall be conducted pursuant to Florida Statutes relating to mediation, arbitration or litigation.
356  33. CONTRACT NOT RECORDABLE AND PERSONS BOUND: The benefits and obligations of these covenants
357  herein shall inure to and bind the respective heirs, representatives, successors and assigns (when assignment is
358  permitted) of the parties hereto. Neither this Contract nor any notice shall be recorded in any public records.
359  34. SURVIVAL OF COVENANTS: No provision, covenant or warranty of this Contract shall survive the closing
360  except as expressly provided herein and except express representations and warranties contained herein.
361  35. CONCURRENCY: No representation is made regarding the ability to change the current use of or to improve the
362  Property under the Local Government Comprehensive Planning and Land Development Regulation Act (Chapter 163 et
363  seq., Florida Statutes) or any comprehensive plan or other similar ordinance promulgated by controlling governmental
364  authorities in accordance with the Act.

This software is licensed to Shawn Jhanon - Castelli Real Estate Services; www.theportlandock.com

Form #1091                          Page 7 of 10                     Revised 6/04/2006

Jul.25. 2007  8:14PM                                                No.6286   P. 10

07/21/2007  18:42   9543775037              REMAX PARTNERS              PAGE  09/23

Property Address: ___ 804 __ NE 15. Ave _____       __ Fort Lauderdale __ #2 ___ 33304 __

365 36. FIRPTA: The I.R.S. code requires Buyer to withhold ten percent (10%) of the Purchase Price for tax on sales by
366 certain foreigners. The tax will be withheld unless affidavits of compliance with the I.R.A. code or an I.R.S. qualifying
367 statement are provided to Buyer at closing. If this paragraph applies, Buyer and Seller agree to obtain and/or disclose
368 their U.S. Social Security Number or Taxpayers Identification Number if required by the closing agent.

369 37. DISCLOSURES:

370 37.1 RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in
371 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed
372 federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon
373 testing may be obtained from your county public health unit.

374 37.2 MOLD: Mold and/or other microscopic organisms may exist at the Property and such microscopic organisms
375 and/or mold may cause physical injuries, including but not limited to allergic and/or respiratory reactions or other
376 problems, particularly in persons with immune system problems, young children and/or elderly persons.

377 37.3 ENERGY-EFFICIENCY RATING: "In accordance with the Florida Building Energy-Efficiency Rating Act
378 (Chapter 553, Part XI, F.S. (1993)), the Buyer of Real Property with a building for occupancy located thereon is
379 notified that the Buyer may have the building's energy-efficiency rating determined." Buyer acknowledges receipt of the
380 "Florida Building Energy-Efficiency Rating System" Disclosure.

381 37.4 PROPERTY TAX DISCLOSURE SUMMARY: Buyer should not rely on the Seller's current property taxes as the
382 amount of property taxes that the Buyer may be obligated to pay in the year subsequent to purchase. A change of
383 ownership or property improvements triggers reassessments of the property that could result in higher property taxes. If
384 you have any questions concerning valuation, contact the county Property Appraiser's Office for information.

385 37.5 CLOSING COSTS: Buyer may be required to pay additional closing costs, including but not limited to: Attorney's
386 fees; casualty, hazard, windstorm and flood insurance premiums; title examination and closing service fees; taxes
387 including property tax proration; recording costs; survey costs; courier fees; tax service fees; underwriting fees;
388 document preparation fees; utility search fees; premiums for owner and mortgagee title insurance and endorsements; and
389 costs associated with obtaining financing, such as: application fee, appraisal fee, credit report fee and points or
390 assumption fee.

391 37.6 SELECTION OF SERVICE PROVIDERS: If Broker gives Buyer or Seller referrals to professional persons,
392 service or product providers or vendors of any type, including, but not limited to: lending institutions, loan brokers,
393 attorneys, title insurers, escrow companies, inspectors, structural engineers, pest control companies, contractors and
394 home warranty companies ("Providers"), the referrals are given based on the following disclosures:

395 37.6.1 Buyer and Seller are free to select Providers other than those referred or recommended by Broker.

396 37.6.2 If Buyer or Seller instructs Broker to arrange for any Provider to perform services related to this Contract, Broker
397 makes such arrangements only as Authorized Representative for the account of Buyer or Seller.

398 37.6.3 Broker does not guarantee the performance of any Providers.

399 37.7 Disclosure for real property located partially or totally seaward of the Coastal Construction Control Line defined
400 in F.S. 161.053.

401 "The property being purchased may be subject to coastal erosion and to federal, state, or local regulations that
402 govern coastal property, including the delineation of the coastal construction control line, rigid coastal protection
403 structures, beach nourishment, and the protection of marine turtles. Additional information can be obtained from the
404 Florida Department of Environmental Protection, including whether there are significant erosion conditions associated
405 with the shoreline of the property being purchased."

406 38. DISCLOSURE OF LATENT DEFECTS: Seller specifically acknowledges and understands that if Seller knows of
407 latent defects (defects not readily observable) materially affecting the value of the Property, then Seller is under a duty
408 to disclose these latent defects to Buyer. Seller represents that if Seller knows of latent defects, they are set forth in
409 writing under Special Clauses below or have been separately disclosed by Seller to Buyer. Seller and Buyer agree to
410 indemnify and hold harmless Broker from damages resulting from the inaccuracy of this information except to the extent
411 Broker was aware of latent defects and did not disclose them to Buyer.

412 39. DISCLOSURE SUMMARY FOR MANDATORY HOMEOWNERS' ASSOCIATION/COMMUNITY: For all
413 properties which are not condominiums or cooperative apartments. The Homeowners' Association/Community
414 Disclosure Summary is incorporated into and made a part of this Contract. IF THE PROPERTY IS LOCATED WITHIN
415 AN ASSOCIATION WHERE MEMBERSHIP IS MANDATORY, A DISCLOSURE SUMMARY IS REQUIRED.
416 BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE
417 DISCLOSURE SUMMARY. IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA
418 STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING

Form # 1001 _____ This_____    Page 8 of 10                    Revised 6/16/2006

Jul. 25. 2007  8:15PM                                          No. 6286   P. 11

87/21/2007  10:42   9543775837          RDMAX PARTNERS                    PAGE  10/23

Property Address:  504   NE 14. Ave                 Fort Lauderdale   FL   33304

419 THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO
420 SELLER OR SELLER'S AGENT WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL
421 WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING,
422 WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO
423 EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.
424 40. FINAL AGREEMENT: This is the final agreement of the parties and no agreements or representations unless
425 incorporated herein shall be binding on the parties. Typewritten provisions shall supersede printed provisions and
426 handwritten provisions shall supersede typewritten and/or printed provisions. Such handwritten or typewritten
427 provisions as are appropriate may be inserted on this form or attached as an addendum. Whenever used, the singular
428 number shall include the plural, the plural the singular, and the use of any gender shall include all genders.
429 SPECIAL CLAUSES:
430
431
432
433
434
435
436
437
438
439
440
441
442
443
444
445
446
447
448
449
450
451
452
453
454 ADDENDUM(S) ATTACHED: CHECK ALL THAT APPLY
455 (  ) 1031 Exchange (Seller Exchanging)        (  ) Homeowners' Association Addendum
456 (  ) 1031 Exchange (Buyer Exchanging)         (  ) Homeowners' Assoc./Community Disclosure Summary
457 (  ) AS-IS Addendum                           (  ) Interest-Bearing Escrow Agreement
458 (  ) Appraisal Addendum                        (  ) Lead-Based Paint Disclosure
459 (  ) Back-up Contract Amendment                (  ) Listing Stays on Market with Kick-Out Clause
460 (  ) Coastal Construction Control Line Waiver  (  ) Option To Purchase Addendum
461 (  ) Condominium Addendum                      (  ) Rental or Occupancy Addendum
462 (  ) Contingent on Closing of Buyer's Property Addendum (  ) Seller's Disclosure
463 (  ) FHA/VA Addendum                           (  ) Other: _____
464 (  ) FIRPTA Addendum

This software is licensed by (Jason Johnson - Cachalia Real Estate Services) www.transactiondesk.com.

Form #1001                          Page 9 of 10                          Revised 6/30/2006

Jul.25. 2007 8:15PM                                                   No.6286   P. 12

07/21/2007  18:42   9543775837              REMAX PARTNERS                    PAGE  11/23

Property Address: 604  NE 14. Ave                  Fort Lauderdale           33301

465  BUYER _____ Date          BUYER _____ Date

466  Printed Name _____              Printed Name _____

467  Social Security or Tax I.D. # _____   Social Security or Tax I.D. # _____

468  Address _____

469  Tele. #: _____ Fax #: _____      Tele. #: _____ Fax #: _____

470  E-Mail: _____                         E-Mail: _____

471  DEPOSIT RECEIVED _____ 20___ to be held subject to this Contract and to clearance.

472  Deposit received by (print name): _____ (signature): _____
473  for delivery to Escrow Agent within one (1) business day.
474  ACCEPTANCE OF CONTRACT AND PROFESSIONAL SERVICE FEE: Seller hereby accepts this offer and
475  recognizes _____ RE/MAX Partners 5 _____ as Listing Broker, Broker MLS ID # _____
476  Address _____ _____
477  Tele. # __954-377-6122__ Fax #: __954-377-5837__ Sales Associate __ Paul LaPine, P.A.__
478  Sales Assoc. MLS ID#: __599346__ Sales Assoc. E-Mail: __lpnreurty@aon.com__
479  and recognizes __Castelli Real Estate Services__ as Selling Broker, Broker MLS ID # __692466__
480  Address 718 N Federal Highway              Fort Lauderdale     FL    33304
481  Tele. #: __954-565-7400__ Fax #: __954-865-7418__ Sales Associate __John Castelli__
482  Sales Assoc. MLS ID#: __607486__ Sales Assoc. E-Mail: __johncastelli@bellsouth.net__
483  (CHECK and COMPLETE THE ONE APPLICABLE)
484  (X) IF A WRITTEN LISTING AGREEMENT IS CURRENTLY IN EFFECT: Seller agrees to pay Listing Broker named above
485  according to the existing, separate written professional fee agreement as per MLS # __600602__. If Buyer fails to perform
486  and deposits are retained, 50%, but not exceeding the professional fee, shall be equally divided between the Brokers as full
487  consideration for Brokers' services including costs expended by Brokers, and the balance shall be paid to Seller. OR
488  ( ) IF NO WRITTEN LISTING AGREEMENT IS CURRENTLY IN EFFECT: Seller shall pay Brokers named above, at closing,
489  from the proceeds of sale, a professional fee of _____% of the Purchase Price and a transaction fee of $_____
490  for Brokers' services in effecting the sale by finding Buyer ready willing and able to purchase pursuant to the Contract. If Buyer
491  fails to perform and deposits are retained, 50%, but not exceeding the professional fee, shall be equally divided between the Brokers
492  as full consideration for Brokers' services including costs expended by Brokers, and the balance shall be paid to Seller.
493
494  SELLER _____ Date 7-18-07   SELLER _____ Date
495  Printed Name __Joseph L Castro__              Printed Name _____
496  Social Security or Tax I.D. # _____       Social Security or Tax I.D. # _____
497  Address _____
498  Tele. #: _____ Fax #: _____          Tele. #: _____ Fax #: _____
499  E-Mail: _____                             E-Mail: _____
500  THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. If you do not fully understand this Contract, seek the advice
501  of an attorney prior to signing. If you desire legal or tax advice consult an appropriate professional. This form has been approved
502  by the Broward County Bar Association and the REALTOR® Association of Greater Fort Lauderdale, Inc. Approval does
503  not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular
504  transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of
505  all parties.

This software is licensed to Steven Johnson - Copyright Real Estate Services www.sunsetsolutions.com.

Form 21001                        Page 10 of 10                    Revised 6/30/2006

Jul.25. 2007  8:16PM                                No.6286   P. 13

07/21/2007  10:42    9543775837          ROMAX PARTNERS          PAGE  12/23

## Addendum to Contract

Buyer:      A & J Realty Trust  or assigns (to an entity it controls )

Seller:     JLC LLC (Joe Casalana)

Property:   604 N.E. 14 Ave Ft Lauderdale Fl 33304  Victoria Landing # 2

The following clauses shall amend the Deposit Receipt and Contract for Sale and purchase to which this is attached. In the event of inconsistencies between the Addendum and the Contract, the provisions contained in this Addendum shall prevail.

Buyer and Seller hereby agree to:

1. Developer's contract will stay in full force and will not be considered null and void until Unit 2 is closed and funded by new buyer, A & J Realty Trust or assigns to an entity it controls.
2. A &J Realty Trust is purchasing unit 2 for $ 740,000 dollars and will be responsible for their own closing cost.
3. Seller Joe Casalana will be responsible for developer's fees and closing cost in original developer's contract except the 1.75 % because the buyer A & J Realty Trust will be paying for their own title work and choosing their own title company.
4. All original escrow deposits will stay with Developer and his escrow agent until closing, but will be refunded to JLC Developers LLC ( Joe Casalana) at the time and place of closing.
5. Joe Casalana will pay 3 % of purchase price ( $ 740,000 ) to Castelli Real Estate Services.  2½ %
6. Closing shall take 15 days after certificate of occupancy is issued by authorized governmental agency.

Buyer: _____   Date: _____

Buyer: _____   Date: _____

Seller: _____   Date: ___1-18-07___

Seller: _____   Date: _____



**EXHIBIT**

3



ROBERT S. TANNER
RST@LEIBYLAW.COM

June 2, 2008

<u>Sent via U.S Mail and Certified Mail</u>
<u>RR# 7006 3450 0003 6799 7185</u>

Mr. Jeff Rose
200 SW 172 Avenue
Pembroke Pines, Florida 33029

and

<u>Sent via U.S Mail and Certified Mail</u>
<u>RR# 7006 3450 0003 6799 7192</u>

17416 SW 35 CT
Miramar, Florida 33029

   Re: Wrongful Taking of Deposits on Units at Victoria Landings

Dear Mr. Rose:

   As you know, this firm represents JLC Developers, LLC in connection with the two units in Victoria Landing that you agreed to purchase. This letter is addressed to you individually.

   As you know, you signed two contracts for purchase and sale of the aforementioned units. By executing those contracts, you became bound to place a total of $100,000.00 on deposit with a licensed title company. We are informed that on or about August 13, 2007, you delivered checks for $100,000.00 to Capital Title & Abstract, LLC, but you subsequently made misrepresentations to Capital Title to induce it to release those checks to you. JLC Developers, LLC had a valid and enforceable property interest in those monies and as a result thereof, and as a result of the terms of the contracts, you were legally prohibited from directing the disposition of those funds



EXHIBIT
C

June 2, 2008
Mr. Jeff Rose
Page 2

without the consent and agreement of JLC Developers, LLC. By acting unilaterally to direct the disposition of those funds, you deprived JLC Developers, LLC of substantial legal rights. Your actions constituted theft of JLC Developers, LLC's property.

Section 772.11 Fla. Stat., entitled "Civil Remedy for Theft," provides in pertinent part that "any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of the provisions of §§812.012-812.037 has a cause of action for the three-fold of the actual damages sustained and, in any such action, is entitled to the minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this Section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this Section. If the person to whom the written demand is made complies with such demand within thirty (30) days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft by the person making the written demand."

In accordance with §772.11 Fla. Stat., JLC Developers, LLC, hereby makes written demand upon you to pay treble damages for the loss sustained by JLC Developers, LLC in the amount of $300,000.00 within thirty (30) days after receipt of this written demand. If that sum is not paid within thirty (30) days from your receipt hereof, JLC Developers, LLC will seek to recover from you personally all damages recoverable in a civil theft action, plus attorney's fees.

Sincerely,

LEIBY STEARNS & ROBERTS, P.A.

Robert S. Tanner, Esq.

Bcc: Joseph Casalena

1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199    Fax (954) 382-9063
http://www.leibylaw.com



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Jeff Rosse
200 SW 172 Ave.
Pembroke Pines, Fl 33029

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature]   ☐ Agent
               ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7006 3450 0003 6799 7185

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

LEIBY STEARNS AND ROBERTS, P.A.
1000 Sawgrass Corporate Parkway
Suite 552
Ft. Lauderdale, FL 33323





21.0801
Casalena



# LEIBY
# STEARNS &
# ROBERTS, P.A.

*Attorneys at Law*

ROBERT S. TANNER
RST@LEIBYLAW.COM

VIA CERTIFIED MAIL RR 7004 1160 0001 2837 1602
FIRST CLASS MAIL AND FEDERAL EXPRESS

A&J Trust, LLC
Attn: Jeff Rose
200 SW 172nd Ave.
Pembroke Pines, FL 33029

Re:   Worthless check claim
      Our File No. 21.0801

Dear Mr. Rose:

This firm represents Joseph Casalena with respect to various matters. You are hereby notified that the following check issued by you was dishonored or was ordered not to be paid. Pursuant to Florida law, you have 30 days from the date of this notice to tender payment of the full amount of each check plus a service charge of $25, if the face value does not exceed $50, $30, if the face value exceeds $50 but does not exceed $300, $40, if the face value exceeds $300, or an amount of up to 5 percent of the face amount of the check, whichever is greater, the total amount due for each check being set forth below. Unless the amount due on the check is paid in full within the time specified above, the holder of such check may turn over the dishonored check and all other available information in relation to this incident to the state attorney for criminal prosecution. You may be additionally liable in a civil action for triple the amount of the check, but in no case less than $50, together with the amount of the check, a service charge, court costs, reasonable attorney fees, and incurred bank fees, as provided in Section 68.065, Florida Statutes.

| Check No. | Date | Amount of Check | TOTAL AMOUNT DUE |
|-----------|------|-----------------|------------------|
| 1028 | 5-20-09 | $5,000.00 | $5,250.00 |

1000 Sawgrass Corporate Parkway, Ft. Lauderdale, Florida 33323
Broward (954) 382-9199   Fax (954) 382-9063
http://www.leibylaw.com



EXHIBIT
E



U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7004 1160 0001 2937 1402

Sent To _A J Trust LLC / Jeff Rose_
Street, Apt. No.; or PO Box No. _200 SW 172nd Ave_
City, State, ZIP+4 _Pembroke Pines, FL 33029_

A&J Trust, LLC
Attn: Jeff Rose
Page 2


Please make your order payable to Leiby Stearns & Roberts Trust Account and deliver it to Robert S. Tanner at the address below.

Sincerely,
LEIBY STEARNS & ROBERTS, P.A.

Robert S. Tanner

cc:    Greg Metzger, Esq.


## FAIR DEBT COLLECTION ACT NOTICE

This is an attempt to collect a debt on behalf of the original creditor, Joseph Casalena 2840 NE 17th Avenue, Ft. Lauderdale, FL 33334 and any information obtained will be used for that purpose. The amount of the debt is set forth above. The debt will be assumed to be valid by the law firm serving this correspondence, unless within thirty (30) days after you receive this notice you state in writing that you dispute the validity of the debt or some portion thereof. If you provide a written dispute, the law firm will obtain verification of the debt and will mail such verification to you.

From: Origin ID: ZFTA  (954) 382-9189
Robert S. Tanner
Leiby Stearns & Roberts, P.A.
1400 Sawgrass Corporate Pkwy
Suite 552
Ft. Lauderdale, FL 33323

FedEx Express E

Ship Date: 17JUL09
ActWgt: 0.5 LB
CAD: 3382141/INET0060
Account #: S _____

Delivery Address Bar Code

SHIP TO: (954) 382-9189   BILL SENDER
Jeff Rose
A&J Trust
200 SW 172ND AVE

PEMBROKE PINES, FL 33029

Ref #  21.0301
Invoice #
PO #
Dept #



TRK#
5120   7967 8603 0827

MON - 20JUL   A2
PRIORITY OVERNIGHT
DSR

33029
FL-US
FLL

32 FXEA

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

604 NE 14th AVENUE, LLC, a Florida limited liability company,,

        Plaintiff,

v.

JLC DEVELOPERS, LLC, a Florida limited liability company, and JOSEPH L. CASALENA, an individual,,

        Defendant(s).

JLC Developers, LLC, a foreign limited liability corporation,

        Third Party Plaintiff,

v.

A&J Trust, LLC, a Florida limited liability corporation, and Jeff Rose, an individual, and Capital Title and Abstract, LLC, a Florida limited liability corporation,

        Third Party Defendants.

CASE NO. CACE 08-09821 (04)

## FINAL JUDGMENT AFTER DEFAULT

THIS MATTER came before the Court upon Third Party Plaintiff JLC Developers, LLC's Motion for Final Judgment After Default. The Court, having found that Default was properly entered against Third Party Defendant Capital Title and Abstract, LLC, and for good cause shown, hereby FINDS, ORDERS, AND ADJUDGES as follows:

1.      This Court has jurisdiction over the parties and subject matter of this cause.

2.      By failing to timely file or serve any paper in this matter, Third Party Defendant Capital Title and Abstract, LLC, last known address 1100 Park Central Blvd. South 3300,



CASE NO. CACE 08-09821 (04)

Pompano Beach, Fl 33064 has admitted to the well-pled allegations of the Third Party Complaint and no longer has a right to defend in this action.

3.     Third Party Plaintiff JLC Developers, LLC's, 2840 NE 17th Avenue, Wilton Manors, Fl 33334 sustained liquidated damages in the amount of $100,000.00, which amount Third Party Plaintiff JLC Developers, LLC shall have and recover from Third Party Defendant Capital Title and Abstract, LLC, for which execution shall issue forthwith.

4.     Third Party Plaintiff JLC Developers, LLC may proceed to prove its unliquidated damages, the amount of interest and costs to which it is entitled at hearing after proper notice.

5.     The Court reserves jurisdiction for the purposes of enforcing this judgment, assessing interest, fees, and costs upon proper motion and hearing.

6.     Third Party Defendant Capital Title and Abstract, LLC shall complete and serve on counsel for Third Party Plaintiff Form 1.977 contained in the Rules of Civil Procedure and attached hereto within 45 days of the date that this Final Judgment After Default is executed. Failure to do so may be considered contempt of court.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of _____, 2008.

ROBERT B. CARNEY

NOV 0 4 2008

A TRUE COPY

_____
Robert B. Carney
Circuit Judge

Copies furnished to:
Robert S. Tanner, Leiby Stearns & Roberts, P.A., 1000 Sawgrass Corporate Parkway, Suite 552, Ft. Lauderdale, FL 33323
Gregg H. Metzger, Feldman Gale, P.A., 2 South Biscayne Blvd., One Biscayne Tower, 30th Floor, Miami, FL 33131
Michael C. Foster, Bilzin Sumberg Baena Price & Axelrod, LLP, 2500 Wachovia Financial Center, Miami, FL 33131
Rosfislave Zalkind, 6100 Hollywood Blvd., Suite 202, Hollywood, FL 33024
Peter DiPace, 6625 Miami Lakes Drive E., Miami Lakes, FL 33014
Jeff Rose, 200 SW 172nd Ave., Pembroke Pines, FL 33029

2



**AIG Domestic Claims, Inc.**
**Financial Lines**

175 Water Street 7ᵗʰ Floor
New York, NY 10038
(212) 458-1378 (Tel)
(212) 458-2708 (Fax)

**Samantha J. Tenem**
Analyst
Errors & Omissions

CERTIFIED MAIL—RETURN RECEIPT REQUESTED

July 21, 2008

Peter DiPace
Capital Title & Abstract LLC
1100 Park Central Blvd S.
Suite 3300
Pompano Beach, FL 33064

|  |  |  |
|---|---|---|
| _Re:_ | _Insured:_ | Capital Title & Abstract LLC |
|  | _Claimant:_ | JLC Developers LLC |
|  | _Policy No.:_ | TPL9116560 |
|  | _Claim No.:_ | 447-022224 |

Dear Mr. DiPace:

Please be advised that the American International Group Domestic Claims, Inc., Financial Lines on behalf of American Home Assurance Company (hereinafter "Company"), received your correspondence.

A file relevant to this matter has been previously established under your Title Insurance Agents Professional Liability Policy No. 9116560, effective October 5, 2007 to March 31, 2008. This policy has a retroactive date of October 6, 2006. This policy has limits of liability of $1,000,000 per occurrence and a $2,500 deductible.

A review of the documentation provided indicates that plaintiff has filed a lawsuit alleging negligence in failing to properly deposit escrow checks into a trust for a pending purchase on a contract for sale.

The purpose of this letter is to inform you that there is no coverage for this matter under your policy of insurance.

I now respectfully refer you to your policy, which provides as follows:

### INSURING AGREEMENTS

I.        Coverage-Professional Liability.



EXHIBIT
D

The Company will pay on behalf of the Insured those sums in excess of the deductible which the Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD and reported to the Company in writing during the Policy Period or within sixty (60) days thereafter, by reason of any act, error or omission arising out of professional services rendered or which should have been rendered by the Insured or by any person or entity for whose acts, errors, or omissions the Insured is legally liable, and arising out of the conduct of the Insured's profession or capacity as a:

1.   Title Insurance Agent
2.   Title Abstractor
3.   Closing Agent
4.   Escrow Agent
5.   Notary Public

Your policy defines "Policy Period" as:

V. "Policy Period" whenever used in this policy shall mean: the period from the effective date of this policy to the expiration date as set forth in the Declarations or earlier termination date if any of this policy.

*** 

I now respectfully refer you to Endorsement #2, which states:

Cancellation Endorsement

In consideration of a return premium of $1,391.00 plus $14.00 FHCF and $13.00 Regular & Emergency FIGA, it is agreed that this Policy is cancelled effective 3/31/2008 at the Finance Company's request.

All other terms, conditions, and exclusions of this policy shall remain unchanged.

*** 

As such, since this claim was reported after the cancellation of this policy, there is no coverage for this matter

In light of the foregoing and for such other good and sufficient reasons as hereinafter appear, Domestic Claims, Inc., Financial Lines, on behalf of American Home Assurance Company, (hereinafter "Company"), hereby expressly denies coverage in this matter. We will not be assigning defense counsel to represent Capital Title and Abstract LLC nor will be indemnifying Capital Title and Abstract LLC in the event of any adverse judgment or award. Should you have any additional information that you feel would cause us to change our position or assist in our investigation or determination of defense and indemnity obligations, we ask that you advise us as soon as possible. Also, if you are served with any additional demands or pleadings, please forward them to us immediately for review.

This denial of coverage is based upon the information obtained to date. The Company reserves the right to assert other coverage defenses and nothing contained herein are intended to waive any coverage defenses available to the Company in connection with your Title Insurance Agents Professional Liability Insurance Policy.

If you have any questions or wish to discuss this matter further, please do not hesitate to contact me at (212) 458-1378.

Very truly yours,

Samantha J. Tenen
Analyst
Program Professional Liability

cc:

The Plus Companies
520 US Highway 22, 2nd Fl
Bridgewater, NJ 08807